## LINEBAUGH v BERDISH

Docket No. 79414. Submitted April 8, 1985, at Detroit.—Decided August 6, 1985.

Linda Berdish brought an action for damages against James M. Linebaugh, alleging injury resulting from several incidents of sexual contact involving penetration which occurred when Berdish was fourteen years old and Linebaugh was twenty-one. The complaint also alleged negligence in connection with the sexual acts. Linebaugh, hereinafter plaintiff, then brought an action against Berdish and Transamerica Insurance Company seeking a declaratory judgment requiring Transamerica to indemnify plaintiff under plaintiff's parents' homeowner's policy for any judgment recovered against plaintiff by Berdish and requiring Transamerica to defend plaintiff in that action. Transamerica claimed that coverage was excluded because plaintiff's actions were intentional. The Oakland Circuit Court, Richard D. Kuhn, J., granted summary judgment in favor of Transamerica, holding that there was no duty to defend or to indemnify Linebaugh in the event of a recovery by Berdish. Berdish appealed and Linebaugh cross-appealed. *Held:*

1. Generally, the exclusion in the insurance policy herein is one which, to be effective, requires a finding of both an intentional act and an intentional injury.

2. The alleged sexual penetration was intended by plaintiff and, because Berdish was below the age of consent, the intent

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Summary Judgment § 12 *et seq.*
 Right to voluntary dismissal of civil action as affected by opponent's motion for summary judgment, judgment on the pleadings, or directed verdict. 36 ALR3d 1113.
[2] Am Jur 2d, Declaratory Judgments § 40 *et seq.*
 Insured's right to recover attorney's fees incurred in declaratory judgment action to determine existence of coverage under liability policy. 87 ALR3d 429.
[3, 4] Am Jur 2d, Insurance §§ 708, 709.
 Specific exclusion of liability for injury intentionally caused by insured. 2 ALR3d 1238.
[5] Am Jur 2d, Insurance § 1405 *et seq.*
 Liability insurer's negligence or bad faith in conducting defense as ground of liability to insured. 34 ALR3d 533.

to injure or harm may be inferred as a matter of law. Therefore, the insurance policy exclusion applies to the facts in this case.

3. Because no theory of recovery would even arguably fall within the policy coverage, the trial court properly held that Transamerica had no duty to defend the plaintiff.

4. Berdish's allegations of negligence were merely an attempt to trigger insurance coverage by characterizing allegations of tortious conduct as "negligent" activity. The complaint seeks recovery from Linebaugh for the alleged intentional acts committed by him. Thus, summary judgment was properly granted in favor of defendant Transamerica.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT.

A motion for summary judgment for lack of a genuine issue of material fact tests the factual support for the plaintiff's claim; the trial court must consider the affidavits, pleadings, depositions, admissions and documentary evidence, and if the kind of record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ, the motion should be denied (GCR 1963, 117.2[3]).

2. ACTIONS — DECLARATORY JUDGMENT — INSURANCE.

A declaratory judgment action is especially suitable and available to adjudicate before trial conflicts arising between an insured and an insurer.

3. INSURANCE — EXCLUSIONS — INTENTIONAL ACTS AND INJURIES.

An insurance policy provision which excludes liability coverage for "injury, sickness, diseases, death or destruction caused intentionally by or at the direction of the insured" is effective only where there is both an intentional act and an intentionally caused injury.

4. INSURANCE — INTENT TO INJURE — INFERENCES.

An intent to injure or harm may be inferred as a matter of law where an adult intentionally engages in sexual penetration with a minor child; the defense or payment of damages on behalf of an insured against whom an action has been brought because of such an act is not covered by an insurance policy which excludes injuries intentionally caused by the insured.

5. INSURANCE — DUTY TO DEFEND — THEORIES OF LIABILITY.

The duty of an insurer to defend the insured depends upon the

allegations in the third party's complaint against the insured, and is not limited to meritorious suits but may extend even to actions which are groundless, false, or fraudulent as long as the allegations even arguably come within the policy coverage; the insurer has a duty to defend, despite theories of liability asserted which are not covered under the policy, if there are any theories of recovery that do fall within the policy.

*Foster, Meade, Magill & Rumsey* (by *Katherine E. Ward*), and *Brimacombe & Schlecte, P.C.* (by *Mark A. Hopper*), for plaintiff.

*Googasian, Hopkins, Forhan & Hohauser* (by *George A. Googasian* and *Jacquelyn K. Hayes*), for defendant Berdish.

*Ulanoff, Ross & Wesley, P.C.* (by *Stuart A. Ulanoff*), for Transamerica Insurance Company.

Before: HOOD, P.J., and V. J. BRENNAN and R. M. MAHER, JJ.

PER CURIAM. Linda Berdish filed suit in Oakland County Circuit Court against James Michael Linebaugh on September 22, 1982, seeking recovery for damages she allegedly sustained because of injuries allegedly resulting from several incidents of nonconsensual intercourse ("sexual assault") and forced fellatio perpetrated by Linebaugh (a disc jockey) when he was twenty-one and she was fourteen years of age. The complaint also contained allegations of negligence. Berdish amended her complaint (incorporating all allegations contained in her first complaint) on June 9, 1983, adding Linebaugh's employer as a party defendant. On June 14, 1983, Linebaugh filed the present action against Berdish and Transamerica Insurance Company seeking a declaratory judgment to require indemnification under Linebaugh's parents' homeowner's policy for any judgment recov-

ered against Linebaugh in the Berdish suit and to compel Transamerica to defend Linebaugh in that suit. Transamerica claimed in its September 13, 1983, answer that coverage was excluded under the policy because Linebaugh's actions were intentional. Transamerica, however, agreed to defend Linebaugh with a reservation of its rights.

On January 17, 1984, Linebaugh moved for partial summary judgment against Transamerica. Transamerica filed a cross motion for summary judgment on March 21, 1984. Judge Richard D. Kuhn issued an opinion and order on June 11, 1984, denying Linebaugh's motion and granting Transamerica's motion, GCR 1963, 117.2(3). Judge Kuhn found no duty to defend Linebaugh and no duty to indemnify him should Berdish recover in her underlying lawsuit, which has not yet gone to trial. A final order was entered on June 28, 1984, and Berdish appeals from this order as of right and Linebaugh cross-appeals as of right.

The first issue for our consideration is whether an intent to injure may be inferred as a matter of law from the nature of Linebaugh's alleged sexual contacts with Berdish.

Although neither party identified the basis for the summary judgment motions, the trial court based its grant of summary judgment for Transamerica on GCR 1973, 117.2(3), since affidavits were attached to the motion. See also MCR 1985, 2.116(G)(3)(b) (affidavits required for a motion under rule MCR 1985, 2.116[C][10]). A motion for summary judgment under GCR 1963, 117.2(3) asserts that no genuine issue of material fact exists. Such a motion for summary judgment should not be granted when there is an issue of material fact, since the motion tests the factual support for plaintiff's claim. *Soderberg v Detroit Bank & Trust Co,* 126 Mich App 474, 479; 337 NW2d 364 (1983),

*lv den* 419 Mich 867 (1984). The trial court must consider the affidavits submitted, pleadings, depositions, admissions and documentary evidence. GCR 1963, 117.3. See also MCR 1985, 2.116(C)(10) and (G)(5). The opposing party must show that a genuine issue of disputed fact exists. The test is whether the kind of record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ. This Court is liberal in finding a genuine issue of material fact. *Rizzo v Kretschmer,* 389 Mich 363, 371-373; 207 NW2d 316 (1973). In this case, the central issue is whether Linebaugh, then twenty-one years old, intended to injure Berdish, then fourteen, when he allegedly had sexual intercourse with her. Unless the intent to injure can be inferred as a matter of law, a genuine issue of fact regarding Linebaugh's intentions remains and summary judgment under this rule would be improper. Thus, if we decide that intent to injure can be inferred, as a matter of law, summary judgment was proper because coverage under the policy in question excludes intentional injuries.

Although no findings of fact have been made in Berdish's related suit against Linebaugh for injuries arising out of Linebaugh's alleged sexual contacts with her, a "declaratory judgment action is especially suitable and available to adjudicate before trial conflicts arising between an insured and an insurer". *Group Ins Co of Michigan v Morelli,* 111 Mich App 510, 514; 314 NW2d 672 (1981).

The cases in Michigan concerning exclusions from homeowner's insurance coverage have generally construed one of two policy forms. Many older cases, in particular, have concerned exclusions for "injury, sickness, disease, death, or destruction caused intentionally by or at the direction of the

insured", which is approximately the wording of the policy in this case.

The homeowner's policy issued by Transamerica to Linebaugh's parents provides that Transamerica will indemnify its insureds against "occurrences" which are accidentally caused. The policy states in part:

"Section II. Comprehensive Personal Liability, definition:

*  *  *

"(b) Occurrence. 'Occurrence' means an accident, or a continuous or repeated exposure to conditions, which results in injury during the Policy Period, provided the injury is accidentally caused. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

*  *  *

"Section II of this Policy Does Not Apply:

"(c) Under coverages E and F, to injury, sickness, diseases, death or destruction caused intentionally by or at the direction of the Insured."

The other line of Michigan cases interprets exclusions for some type of "bodily injury which is expected or intended from the standpoint of the insured". The type of insurance coverage being construed in a particular case should be constantly borne in mind. See generally, Anno: *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 31 ALR4th 957, 971-976.

The general rule appears to be that the exclusion found in the instant case, to be effective, requires both an intentional act and an intentionally caused injury. *Putman v Zeluff,* 372 Mich 553, 557; 127 NW2d 374 (1964); *Morrill v Gallagher,* 370 Mich 578, 588; 122 NW2d 687 (1963) (fire-

cracker intentionally thrown but injury was not intentional). This also appears to be the general rule in cases involving exclusions for injuries intended or expected by the insured. *Morelli, supra,* p 514. The central issue in the instant case focuses on whether there remains a question of fact as to Linebaugh's intention to injure or whether intent to injure may be inferred here as a matter of law from the facts of the case because a twenty-one-year-old man allegedly had sex with a fourteen-year-old girl. As a preliminary, a discussion of the cases dealing with intent is necessary.

Insurance coverage has been excluded for intentional acts in several cases. *Kermans v Pendleton,* 62 Mich App 576, 579-580; 233 NW2d 658 (1975), involved an insured who shot and wounded another person. The defendant's homeowner's policy excluded bodily injury "caused feloniously or intentionally". This Court held that any distinction between intended felonious acts and unintended felonious results was a distinction without a difference, at least under the circumstances of that case. Both acts and results are intended when a firearm is pointed at another human being and the Court noted that the actual result could be anticipated.

In *Morelli, supra,* James Nesbitt was dating Ellen Wilson. While he was with her at her home, Morelli, who had previously dated Wilson, walked over to Nesbitt and kicked him in the face, breaking Nesbitt's nose. A finding that Morelli had committed the intentional tort of assault and battery encompassed "the corollary finding that [Morelli] must have intended the injury". 111 Mich App 516. Relying on *Kermans, supra,* this Court found the distinction between intended tortious acts and unintended tortious results to be one without a difference under the circumstances. Morelli's policy excluded bodily injury "expected or

intended from the standpoint of the insured". This Court found Nesbitt's injury to be the "natural, foreseeable, expected and anticipatory result of the intentional act of Morelli", and, thus, the act and the injury were intentional. *Id.* Interpreting a similar exclusion in *Wright v White Birch Park, Inc,* 118 Mich App 639, 645; 325 NW2d 524 (1982), this Court held that "a reasonable person could 'expect' injury to a person that repeatedly receives blows from fists thrown to a point where that person states he 'had enough' ".

In *Farm Bureau Mutual Ins Co v Rademacher,* 135 Mich App 200; 351 NW2d 914 (1984), Rademacher intentionally struck Eberhard with his fist after the latter threw snowballs at his van. Eberhard suffered a broken jaw. Rademacher's homeowner's policy excluded injury "caused intentionally". The trial court found Eberhard's injury to be "a natural, probable, foreseeable, and expected result". *Id.,* 202. This Court found the factual situation to be most similar to the *Kermans* and *Morelli* cases. Thus, the trial court's inferential finding that the injury was intentionally caused was not clearly erroneous.

*Iacobelli Construction Co, Inc v Western Casualty & Surety Co,* 130 Mich App 255, 262-264; 343 NW2d 517 (1983), involved a general comprehensive liability insurance policy, rather than a homeowner's policy, which excluded property damage expected or intended from the standpoint of the insured. Where one party trespassed with earthmoving equipment and proceeded to dig up another's yard to install sewer lines, this Court held that the injury "must have been anticipated and indeed intended" and was, thus, outside the scope of the policy.

On the other hand, where the defendants threw a "cherry bomb" into a room for the apparent

purpose of frightening someone but serious injury resulted, an exclusion for injury caused intentionally was inapplicable because the defendants did not intend to cause any physical harm. *Morrill, supra,* p 588. The result was the same in *Putman, supra,* p 556, interpreting a similar exclusion. The Court found that coverage was not excluded when a boy shot at a dog which he thought was wild. The boy did not intend to destroy a valuable hunting dog, but rather to stop what he perceived was an imminent attack by the dog.

Insurance coverage was not excluded when an 8-1/2-year-old boy, angry at his neighbors, started a fire to frighten them but, because of his age, did not intend to burn their house. *Connecticut Indemnity Co v Nestor,* 4 Mich App 578, 580-581; 145 NW2d 399 (1966). When a seventeen-year-old male threw a 40-pound pumpkin off of the side of a highway overpass, intending it to land in front of or alongside of a car to frighten the driver, insurance coverage was required even when the pumpkin struck the windshield, causing serious facial and eye injuries. The boy had pled guilty to aggravated assault, but maintained throughout all the proceedings that he never intended to injure the motorist. *Vermont Mutual Ins Co v Dalzell,* 52 Mich App 686; 218 NW2d 52 (1974), *lv den* 392 Mich 803 (1974).

Assuming *arguendo* that Linebaugh intended no injury to Berdish, the question remains whether some actions, such as sex with a minor, statutorily defined, carries such a certainty of injury that intent to harm may be inferred as a matter of law for insurance coverage cases. The precise situation involved here has not been addressed in a published opinion by a Michigan court.

Other courts in our sister jurisdictions have been faced with the precise question before us.

The Minnesota courts have addressed this question four times. In *Fireman's Fund Ins Co v Hill,* 314 NW2d 834 (Minn, 1982), Hill sexually abused a male foster child in his home. Although Minnesota law required an intention to cause the specific injury before coverage would be excluded under a homeowner's policy, the Court noted that intent to injure may be found if the actual injury is different in kind or more severe than intended. The Minnesota Supreme Court found Hill's conduct to be such that an intent to injure could be inferred as a matter of law. Hill knew his conduct would be disapproved of and he had been confronted with allegations of abusing foster children before. *Horace Mann Ins Co v Independent School Dist No 656,* 355 NW2d 413 (Minn, 1984), involved a male teacher who had sexual relations with a tenth-grade girl who was on a basketball team he coached and whom he was counselling for drug problems. Insurance coverage under his homeowner's policy was excluded because, even though he did not subjectively intend to harm the girl, an intent to injure could be inferred from the "unconsented sexual contact with a minor". *Id.,* 416. The results were the same in a case involving nonconsensual sexual contact with a disabled adult by a counselor, *State Farm Fire & Casualty Co v Williams,* 355 NW2d 421 (Minn, 1984), and repeated sexual assaults on a minor girl (from the time she was twelve until she was sixteen years of age) by her uncle, *Estate of Lehmann v Metzger,* 355 NW2d 425 (Minn, 1984).

Similarly, in *CNA Ins Co v McGinnis,* 282 Ark 90; 666 SW2d 689 (1984), the insured sexually assaulted his stepdaughter and sought coverage under his homeowner's policy when he was sued. The Arkansas Court of Appeals allowed coverage since there was no direct evidence that McGinnis

intended to inflict harm or damage upon his stepdaughter and Arkansas law did not apply the tort foreseeability concept in insurance cases. 10 Ark App 234; 663 SW2d 182 (1984). The Arkansas Supreme Court reversed. Noting that McGinnis had had "almost daily" sexual relations with his stepdaughter from the time she was six years old until she was sixteen, at which time he was arrested, the Court held that the test was "what a plain ordinary person would expect and intend to result from a mature man's deliberately debauching his six-year-old stepdaughter and continuing to do so for years". McGinnis' claim that he did not intend any injury flew "in the face of all reason, common sense and experience". 666 SW2d 690-691.

In *Allstate Ins Co v Kim W,* 160 Cal App 3d 326; 206 Cal Rptr 609 (1984), LeRoy Korte sexually assaulted Kim W., a minor. Admitting that his actions were in violation of § 288 of the California Penal Code, he nonetheless sought coverage under his homeowner's policy, which excluded injury "intentionally caused by an insured person". The California Court of Appeals concluded that the penal code's prohibitions of lewd or lascivious acts upon a child under 14 with the intent of arousing or gratifying either the perpetrator or the child was intended in part to protect children from such assaults. Implicit in such a determination is the idea that some harm is inherent in and inevitably results from such acts. Thus, the Court inferred an intent to harm as a matter of law. *Id.,* 613.

New Hampshire, however, has allowed coverage in a similar case. In *MacKinnon v Hanover Ins Co,* 124 NH 456; 471 A2d 1166 (1984), MacKinnon sexually abused his six-year-old stepdaughter. His homeowner's policy excluded "bodily injury * * * which is expected or intended by the insured". The New Hampshire Supreme Court held that the

actual expectation or intention of the insured was determinative. The court noted that there may be some acts that "are so nearly certain to produce injury that intent or expectation to injure should be inferred as a matter of law". 471 A2d 1168. The policy language could have provided for an exclusion on this basis, however, and did not. The court declined to inject substantive tort concepts into insurance contract cases. Nor did the court find public policy to exclude coverage. Public policy favored coverage for liability arising directly from intentional torts, such as false arrest and slander, and the court found no reason to apply a different rule when liability arose from sexual assaults. In our opinion, we find the law in Minnesota, California and Arkansas to be the far better view.

It is a difficult case when the alleged sexual acts appear entirely consensual, as in the instant case, with the exception the *one* party is legally unable to consent because of her age. The Legislature, however, in making Linebaugh's alleged acts a crime certainly perceived that harm results to underaged persons engaging in sexual intercourse. One likely harm the Legislature sought to prevent by passing the criminal sexual conduct code, specifically MCL 750.520d; MSA 28.788(4) (third degree criminal sexual conduct), is severe emotional injury to naive fourteen-year-olds barely beginning to adjust to the changes wrought by puberty. Under MCL 750.520d(1)(a); MSA 28.788(4)(1)(a) it is a crime to engage in sexual penetration with a person at least 13 years of age and under 16 years of age.

We also point out "that a charge of statutory rape or criminal sexual conduct is made out by evidence of penetration of a female [male] under the statutory age without regard to her [his] consent. * * * The law traditionally has held that the

consent of a person of such tender years to such acts will not be recognized and accordingly that consent is no defense to such a charge." *People v Worrell,* 417 Mich 617, 621; 340 NW2d 612 (1983). It is our opinion that engaging in sexual penetration with an under-age female would be an act intended by Linebaugh (intentional act) and the intent to injure or harm can be inferred as a matter of law from the alleged sexual penetration of said child. Thus, the exclusion in the insurance policy applies to the facts in the instant case.

The remaining question to answer is whether the trial court erred in finding that defendant Transamerica had no duty to defend plaintiff.

The general rule is well summarized by this Court's holding in *Detroit Edison Co v Michigan Mutual Ins Co,* 102 Mich App 136, 141-142; 301 NW2d 832 (1980):

"The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy, *Dochod v Central Mutual Ins Co,* 81 Mich App 63; 264 NW2d 122 (1978). The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. *Shepard Marine Construction Co v Maryland Casualty Co,* 73 Mich App 62; 250 NW2d 541 (1976). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor."

Because we have concluded that an intent by Linebaugh to injure Berdish may be inferred as a matter of law from his alleged sexual intercourse with a fourteen-year-old girl, no theory of recovery would even arguably fall within the policy coverage and summary judgment was appropriately granted, holding that Transamerica had no duty to defend. *A & G Associates, Inc v Michigan Mutual Ins Co,* 110 Mich App 293, 299; 312 NW2d 235 (1981).

Although Berdish's amended complaint alleged "negligence" as well as the allegations of intentional torts which were incorporated by reference from her first complaint, we agree with the trial court's finding that the complaint is a transparent attempt to trigger insurance coverage by characterizing allegations of tortious conduct under the guise of "negligent" activity. Our review of the complaint reveals that Berdish seeks recovery for the alleged intentional acts committed by Linebaugh. Thus, there was no duty to defend and we hereby affirm the judgment for defendant Transamerica.

Affirmed. We retain no further jurisdiction.