[No. 52535–8. En Banc. December 11, 1986.]

DAYLETTE M. RODRIGUEZ, *Petitioner*, v. DARRELL WADE WILLIAMS, *Defendant*, AMERICAN STATES INSURANCE COMPANY, *Respondent*.

*Greg Boos,* for petitioner.

*William C. Smart* and *Keller Rohrback,* for respondent.

*Robert H. Whaley, John S. Glassman,* and *Bryan P. Harnetiaux* on behalf of Washington Trial Lawyers Association, amici curiae for petitioner.

*Karen Southworth Weaver* on behalf of State Farm Fire and Casualty Co. and *Bertha B. Fitzer* on behalf of Washington Association of Defense Counsel, amici curiae for respondent.

DORE, J.—An incest victim is seeking recovery for damages from her stepfather's homeowner's insurance policy. We uphold the Court of Appeals decision affirming the trial court's summary judgment order denying coverage.

### FACTS

On February 11, 1981, Darrell Williams had sexual intercourse with Daylette Rodriguez, his 15–year–old stepdaughter. He was later convicted of incest for this act. Rodriguez has sued Williams for damages resulting from this incident.

At the time of the incident, Williams had a homeowner's insurance policy with American States Insurance Company. This policy covered "damages because of personal injury," but contained an exclusion for personal injury:

> which is expected or intended by the insured, but this exclusion does not apply to any act committed by or at

the direction of the insured not intended to cause serious bodily injury . . .

Clerk's Papers, at 54. Rodriguez believed this exclusion did not apply and sought a declaration of coverage under the policy. American States denied coverage on the basis of the exclusion for intentional injuries, and moved for summary judgment.

In response to the summary judgment motion Williams submitted an affidavit stating that "at no time did I, in any of my actions expect or intend to cause serious bodily injury . . . to Daylette Rodriguez. I did not, in any way, intend or expect that she would be harmed by any of my actions." Clerk's Papers, at 25. Rodriguez also filed an affidavit by a clinical psychologist who had treated Williams for over a year. The psychologist found no indication "of any intent by [Williams] to cause physical or psychological harm to Daylette." Clerk's Papers, at 27. This affidavit was stricken from the record because the trial court believed it conclusory and inadmissible at trial. Rodriguez has challenged this decision.

Nevertheless, the trial court ruled that even if the psychologist's affidavit were considered, it "would not find it of sufficient credibility to change or affect its opinion herein." Clerk's Papers, at 5. We agree with this ruling. Williams' affidavit alone establishes a genuine question of fact as to his actual subjective intent, and the psychologist's affidavit does not alter the disposition of this case once Williams' actual intent is determined to be unresolvable at summary judgment. We therefore need not address the issue of whether the affidavit was admissible.

The trial court granted American States' motion for summary judgment, holding that the insurance policy did not cover incest irrespective of Williams' actual intent. Rodriguez appealed, but the Court of Appeals, in a published opinion, affirmed the trial court's dismissal. *Rodriguez v. Williams,* 42 Wn. App. 633, 713 P.2d 135, *review granted,* 105 Wn.2d 1019 (1986).

COVERAGE

Williams' affidavit raises a factual question about his subjective intent at the time of the incident. For the purpose of this opinion, we will assume that Williams did not intend to harm his stepdaughter by his actions. We nevertheless rule that his actual subjective intent is irrelevant, and that the insurance policy did not provide coverage.

In this case, the homeowner's policy purports to cover all personal injury other than that specifically denied in the exclusion section of the policy. Clerk's Papers, at 89. In this regard, the policy differs from numerous cases cited to us by both parties in which coverage for personal injuries only applies to "accidental occurrences." *See, e.g., Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 579 P.2d 1015 (1978); *Western Nat'l Assur. Co. v. Hecker,* 43 Wn. App. 816, 719 P.2d 954 (1986); *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834 (Minn. 1982). We believe this distinction is important. Were this an "accidental occurrence" policy, we would simply deny that coverage existed under the policy because the act of committing incest could not be described as an accidental occurrence. Instead, we must rely solely on the exclusion section of the policy.

As this case thus involves the interpretation of an exclusionary clause several rules of construction apply. First, the clause should be strictly construed against the insurer. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 659 P.2d 509 (1983), *modified,* 101 Wn.2d 830, 683 P.2d 186 (1984). Furthermore, the interpretation of the policy is a question of law and should be construed the way an average layman would interpret it. *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 549 P.2d 9 (1976). The relevant clause states that personal injury liability will not apply to injury "which is expected or intended by the insured, *but this exclusion does not apply to any act committed by . . . the insured not intended to cause serious bodily injury . . .*" Clerk's Papers, at 89.

Courts in other jurisdictions, when considering similar exclusionary clauses, have adopted a variety of approaches.

Some courts have held that the subjective intent of the policyholder was not relevant in sexual abuse cases despite the plain language of the policy which indicates that this intent is significant. In *CNA Ins. Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689 (1984), the Arkansas Supreme Court rejected a policyholder's claim that he did not intend to harm his stepdaughter during numerous molestations occurring over a period of nearly 10 years. Significantly, the court proposed an objective test for determining what is an "expected or intended" act. "*The test is what a plain ordinary person would expect and intend to result* from a mature man's deliberately debauching his six–year–old stepdaughter . . ." (Italics ours.) *McGinnis,* at 93. Similar results were reached, construing similar policies, though not in the context of sexual abuse, in *Mutual Serv. Cas. Ins. Co. v. McGehee,* __ Mont. __, 711 P.2d 826 (1985) and *Truck Ins. Exch. v. Pickering,* 642 S.W.2d 113 (Mo. Ct. App. 1982).

American States Insurance Company also claims that the first Washington case considering the terms of this type of insurance policy also adopted this objective standard. In *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 579 P.2d 1015 (1978) an 11–year–old boy intentionally set fire to a trash can, which accidentally burned down a school building. The boy's parents had homeowner's insurance covering personal liability for "accidents," with an exclusion for expected or intended injuries. The Court of Appeals denied coverage, principally because the policy covered "accidents", a term which does not include the deliberate act of setting fire to a trash can. Even though *Unigard* is an "accident" case, American States believes it relevant because the court held in dicta that the fire damage could be objectively described as "the expected or intended result of a clearly intentional act." *Unigard,* at 265. This language implies that once the act causing the injury was intentional, if objectively the injury could be expected by the intentional act, then it would fit within the exclusion in the policy.

In this case the Court of Appeals followed the *Unigard* interpretation and used an objective interpretation. It believed that a child would likely suffer injury from incest, and that a reasonable person would expect such result to occur. *Rodriguez,* at 636. Thus, Rodriguez' injuries were expected by Williams regardless of his actual intent or belief and the exclusion therefore applied.

We do not agree with this analysis. While doubtlessly the average purchaser of insurance would believe that incest would harm a child, the policy specifically states that the insured must expect or intend harm. Thus, the policy language itself is inconsistent with a blanket objective person standard, and the policy language must control. Moreover, if an objective standard is used, virtually no intentional act would ever be covered. Intentional acts which result in injury generally can be expected to result in injury. An objective standard, especially provided after the fact, would seem to render meaningless the plain language providing for coverage for certain intentional acts.

The New Hampshire Supreme Court, when construing a similar clause, read the language in the policy as providing for coverage in this type of case. In *MacKinnon v. Hanover Ins. Co.,* 124 N.H. 456, 459, 471 A.2d 1166 (1984), a stepfather sexually abused his 6–year–old stepdaughter. When she brought an action for damages, the court ruled that the plain language of the insurance policy (which had an exclusion for "bodily injury . . . expected or intended by the insured") required that the actual subjective intent of the stepfather be considered. Thus, even if the stepfather intended to commit incest (which in this state is enough to convict him of the crime of incest, RCW 9A.64.020) if he did not intend to harm his stepdaughter, the insurance policy would cover the injuries. A similar result was reached in *Alabama Farm Bur. Mut. Cas. Ins. Co. v. Dyer,* 454 So. 2d 921 (Ala. 1984) (a wrongful death case), in which the subjective intent of the policyholder was considered to be crucial.

Other courts, when faced with policies similar to this one,

have taken a different route. While they have not adopted a completely objective approach, they have nevertheless denied coverage in this type of situation. These courts have inferred an intent to harm, even though an actual, subjective harm was absent. These cases do not completely reject the subjective intent; rather, they overrule the insured's actual intent in limited circumstances. Thus, in *Linebaugh v. Berdish,* 144 Mich. App. 750, 376 N.W.2d 400 (1985) the court held that in a statutory rape case, "The Legislature . . . in making Linebaugh's alleged acts a crime certainly perceived that harm results to underaged persons engaging in sexual intercourse." *Linebaugh,* at 761. Thus harm was inferred, even though it was clearly not intended, thereby making inapplicable Linebaugh's homeowner's policy.

Similarly, in *Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 694 P.2d 181 (1984), the Arizona Supreme Court indicated that coverage in an assault case was excluded if the assault were wrongful, irrespective of the intent to injure. Similar results can be found in *State Farm Fire & Cas. Co. v. Williams,* 355 N.W.2d 421 (Minn. 1984) (intent inferred despite stipulation that insured intended no harm in sex abuse case); *Illinois Farmers Ins. Co. v. Judith G.,* 379 N.W.2d 638 (Minn. Ct. App. 1986) (intent inferred in sex abuse case).

We believe this line of cases is persuasive and that intent to injure, while normally a subjective determination under the wording of this policy, should be inferred to the insured in sex abuse cases. The Legislature, by making incest a class B felony, recognized that incest would harm the victim of such an act. *See, e.g., Linebaugh.* Furthermore, once this intent is inferred, it is unimportant that the scope of the injuries inflicted are greater than or different from the injuries which objectively might be expected.

We therefore hold that the insured intends harm as a matter of law when he commits incest. Applying this test to the subject case, Williams admittedly intended to commit the act of incest which caused his stepdaughter's injuries. Therefore, we hold that Williams intended to injure Day-

lette as a matter of law irrespective of his actual subjective intent. The exclusion in the subject homeowner's policy applies, and the trial court was correct in denying coverage.

CONCLUSION

The exclusion for personal injuries "expected or intended by the insured" applies in this sex abuse case. American Insurance's policy does not cover incest and coverage was properly denied. The trial court's summary judgment in favor of American Insurance is affirmed.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, CALLOW, GOODLOE, and DURHAM, JJ., concur.

ANDERSEN, J., concurs in the result.

Reconsideration denied February 24, 1987.