[No. 19296-5-I.   Division One.   August 3, 1987.]

PUBLIC EMPLOYEES MUTUAL INSURANCE COMPANY, *Respondent*, v. CHARLES D. RASH, *Defendant*, Y. SERE BURFORD, *as Guardian ad Litem, Appellant.*

*David W. Soukup* and *Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz,* for appellant.

*Sidney Snyder* and *Merrick, Hofstedt & Lindsey,* for respondent.

SCHOLFIELD, C.J.—Y. Sere Burford, acting as guardian ad litem for her son C., appeals the trial court's grant of summary judgment to Public Employees Mutual Insurance Company (PEMCO). The court held that the homeowners policy PEMCO issued to Charles D. Rash excluded coverage for Rash's liability for injuries resulting from his sexual molestation of C. Finding no error, we affirm.

## FACTS

Rash and Burford were married in 1981. Shortly thereafter, Rash began to sexually molest Burford's 9–year–old son, C. He later pleaded guilty to and was convicted of first degree statutory rape and committed to Western State Hospital for treatment as a sexual psychopath.

Burford instituted a civil suit on behalf of her son for his injuries resulting from Rash's conduct. Defense of the suit was tendered to PEMCO under Rash's homeowners policy, which provided in pertinent part:

> If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:
> a. pay up to our limit of liability for the damages for which the insured is legally liable . . .

The policy also contained an exclusion, however, for:

> bodily injury or property damage:
> a. which is *expected* or *intended* by the insured.

(Italics ours.) PEMCO brought a declaratory judgment action to determine its liability in the civil suit, contending

this policy exclusion precluded coverage for intentional sexual abuse.

In opposition to PEMCO's motion, Burford submitted an affidavit in which she stated that Rash:

did not intend to or expect to injure [C.] by his conduct with him. It is apparent that at that time [he] was not in fact *capable of forming an intent to injure* [C.] due to his mental illness.

(Italics ours.) The trial court also considered the affidavit of Lucy Berliner, who has a master's degree in social work, in which she stated that, after discussing the case with Burford and reviewing the evaluation of the Department of Social and Health Services and the deposition testimony of Rash, in her opinion, his "acts [were] performed *with no intention or expectation of harm* to [C.]." (Italics ours.)

The deposition testimony of Charles Rash, which was also before the court, contained the following colloquy:

Q At the time this took place, did you have any intention of hurting [C.] at all?
A No, I didn't.
Q Did you expect what you were doing to [C.] was going to harm him in some fashion?
A I believe I did.
Q Now, what was—are you telling me things that you believed at that time or things you understand, as a result of your treatment, now?
A Well, I knew what I was doing at the time. Sure, I did.

The trial court granted PEMCO's motion for summary judgment, holding that the homeowners policy did not cover Rash for claims arising out of the sexual abuse of C. This appeal timely followed.

### EXCLUSIONARY CLAUSE

Generally, when an insured establishes a prima facie case giving rise to coverage under the provisions of his policy, the burden is then upon the insurer to prove that the loss is not covered because of an exclusionary provision in the policy. *Aetna Ins. Co. v. Kent,* 12 Wn. App. 442, 447, 530 P.2d 672, *rev'd on other grounds,* 85 Wn.2d 942, 540 P.2d

1383 (1975). Burford maintains that PEMCO failed to meet this burden because it did not present any evidence that Rash had the mental capacity to form the intent to harm C., as the exclusionary clause provided. We disagree and hold that this case is controlled by *Rodriguez v. Williams,* 107 Wn.2d 381, 729 P.2d 627 (1986).

In *Rodriguez,* an incest victim sought recovery for damages under her stepfather's homeowners insurance policy. The policy provided coverage for "damages because of personal injury," but contained the following exclusion for injury:

> which is expected or intended by the insured, but this exclusion does not apply to any act committed by or at the direction of the insured not intended to cause serious bodily injury . . .

*Rodriguez,* at 383. The insurance company denied coverage on the basis of this exclusion and moved for summary judgment.

Williams' response was that "'at no time did I, in any of my actions expect or intend to cause serious bodily injury . . . to Daylette Rodriguez. I did not, in any way, intend or expect that she would be harmed by any of my actions.'" *Rodriguez,* at 383. Additionally, Rodriguez submitted the affidavit of a clinical psychologist who had treated Williams and found no indication "'of any intent . . . to cause physical or psychological harm to Daylette.'" *Rodriguez,* at 383.

The court stated "that intent to injure, while normally a subjective determination . . ., should be inferred to the insured in sex abuse cases." *Rodriguez,* at 387. The court went on to say:

> Williams admittedly intended to commit the act of incest which caused his stepdaughter's injuries. Therefore, we hold that Williams intended to injure Daylette *as a matter of law irrespective of his actual subjective intent.*

(Italics ours.) *Rodriguez,* at 388. *See also Grange Ins. Ass'n v. Authier,* 45 Wn. App. 383, 725 P.2d 642 (1986) (homeowners policy provided no coverage for incest victim's damages).

Similarly, in *Western Nat'l Assur. v. Hecker*, 43 Wn. App. 816, 719 P.2d 954 (1986), the insured was sued for personal injuries and emotional distress, the result of forcible anal intercourse. The insured's homeowners policy excluded coverage for injuries "caused intentionally by or at the direction of any *insured*". *Hecker*, at 819. The insured claimed, however, that he had been drinking and smoking marijuana before the incident and that he did not intend nor did he know what he had done.

On review, the court concurred with the finding at trial that the injuries had not occurred accidentally, but noted that "whether an act is intentional is a separate consideration that must be distinguished from whether the actor intended to cause injury." *Hecker*, at 825. Nevertheless, the court concluded that "an act of forcible anal intercourse is an act of such a character that an *intent to cause injury can be inferred as a matter of law*." (Some italics ours.) *Hecker*, at 825.

██ Burford contends that *Rodriguez* is not controlling since the evidence here establishes that Rash was not capable of forming a specific intent to harm C. due to his mental illness, an issue not addressed in that case. However, if in sex abuse cases the subjective intent of the insured is irrelevant, it follows logically that it is likewise irrelevant if the insured is incapable of forming the intent to injure. In either case, the intent to injure is inferred as a matter of law from the commission of the act. Therefore, PEMCO's only burden below was to show that Rash deliberately committed the abuse.

Rash maintained he did not intend to injure C., but admitted that he expected C. would be harmed by his conduct, and stated, "I knew what I was doing at the time." Indeed, Burford does not argue that Rash did not act volitionally, only that he did not intend to injure. In the affidavits Burford and Berliner submitted below, they opined that Rash lacked the capacity to form the intent to injure C. Even were we not to question these witnesses' qualifications to render such an opinion and even were we to ignore

the conclusory nature of these affidavits,[1] Burford failed to create a material issue of fact, which would have precluded summary judgment. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985); CR 56(c).

In any event, a finding of sexual psychopathy is not a finding of lack of capacity to intend to do an act, nor is it a finding of insanity as Burford maintains. We note that the criminal court accepted Rash's plea of guilty to first degree statutory rape. A court may not accept a guilty plea unless it is intelligent and voluntary, and a defendant must be competent to make intelligent and competent decisions. *State v. Jones,* 99 Wn.2d 735, 741, 664 P.2d 1216 (1983). Thus, we must assume the court in the criminal prosecution not only found Rash competent to enter a plea of guilty, but found, beyond a reasonable doubt, that he had the capacity to form the intent to commit first degree statutory rape.

The trial court correctly granted summary judgment for PEMCO, therefore, on the ground that Rash "expected" and, as a matter of law, "intended" by his conduct to injure C.

## ATTORNEY'S FEES

PEMCO asks for an award of its attorney's fees on appeal pursuant to RAP 18.9, maintaining Burford's appeal is frivolous.

█ In determining whether an appeal is frivolous, justifying the imposition of terms and compensatory damages, the court should consider: (1) that a civil appellant has a right to appeal under RAP 2.2; (2) that all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) that the record should be considered as a whole; (4) that an appeal that is affirmed simply because the arguments are rejected is not frivolous; and (5) that "an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally

---

[1]PEMCO challenges Burford's and Berliner's affidavits in both respects, but we need not reach this issue to decide this case and decline to do so.

devoid of merit that there [is] no reasonable possibility of reversal." *Streater v. White,* 26 Wn. App. 430, 435, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980).

With these considerations in mind, we conclude that the theory advanced by Burford sufficiently distinguishes this case from past precedent to defeat the claim that this appeal is frivolous. Accordingly, PEMCO's request for attorney's fees is denied.

The judgment of the trial court is affirmed.

RINGOLD and WEBSTER, JJ., concur.