[No. 10033-2-III.   Division Three.   July 3, 1990.]

ALLSTATE INSURANCE COMPANY, *Respondent,* v. TREY CALKINS, ET AL, *Appellants.*

*Dennis Clayton, Richard C. Eymann,* and *Feltman, Gebhardt, Eymann & Jones, P.S.,* for appellants.

*Peter Johnson* and *Johnson & McLean,* for respondent.

THOMPSON, J.—Allstate Insurance Company brought this action seeking declaratory relief, contending that the homeowner's policy it issued Trey Calkins did not provide coverage for damages sought by Michelle Bratton, through her guardian ad litem, and by her parents, Jerry and Kim Bratton. The Brattons' action was based upon the alleged

negligence of Mr. Calkins in initiating and continuing a sexual relationship with Ms. Bratton while she was a minor and a student of his at Deer Park High School. The Superior Court inferred an intent by Mr. Calkins to injure Ms. Bratton and granted summary judgment to Allstate, applying the policy exclusion for bodily injury "intentionally caused by an insured . . .". The Brattons and Mr. Calkins appeal. We affirm.

Trey Calkins, 36, was employed by the Deer Park School District as a junior high school science teacher. In the spring of 1985, he contracted with the senior high school to coach girls' softball. Seventeen–year–old Michelle Bratton was a member of the softball team. By summer 1985, the two were involved in a sexual relationship. In the fall of 1985, Ms. Bratton became a teacher's assistant in Mr. Calkins' classroom. Their sexual relationship continued for 18 months, during Ms. Bratton's senior year and the beginning of her first year in college. By June 1986, Ms. Bratton had left her parents' house and moved into the Calkinses' home with Mr. Calkins' wife and children. In December 1986, Ms. Bratton attempted suicide.

In June 1988, the Brattons filed an amended complaint for damages against Mr. Calkins[1] and the Deer Park School District. They alleged:

> Trey Calkins committed acts involving Michelle which were a combination of willful and negligent acts, including enticement, molestation, sexual seducement, and destruction of plaintiffs' family relationship. These acts were accomplished through various mental and physical, voluntary and involuntary influences, including flattery, coercion, fondling, persuasion, deception, misrepresentation, domination, power, intimidation, authority, and control.
>
> . . . .
> The acts of Trey Calkins and the negligence of the other defendants, who with actual knowledge knew, or should have known, of the obvious and highly suspicious nature of the conduct being committed by Trey Calkins, were also proximate causes of serious injuries to Michelle . . ..

---

[1] Debby Calkins, Trey Calkins' wife, was named defendant in the Brattons' action, but was later dismissed.

. . . .
. . . The malicious interference [with the family relationship] by defendant Trey Calkins, and the allowing of that interference by the negligent acts of the other defendants, damaged the familial relationship and other protected rights of the plaintiffs.

In a separate declaratory judgment action, Allstate asserted the following policy provision[2] excluded coverage under Mr. Calkins' homeowner's policy for the damages alleged by the Brattons:

Exclusions—Losses We Do Not Cover:
1. We do not cover bodily injury or property damage intentionally caused by an insured person.

The Brattons and Mr. Calkins took the position that Ms. Bratton's injuries were unintentional from the standpoint of the insured, Mr. Calkins. The court granted Allstate's motion for summary judgment on the issue of coverage. It stated:

Upon a review of [cited] cases, this Court concludes it must focus upon the act or acts involved. The law is clear. If those acts constitute sexual abuse or violation of the criminal law intent to injure is inferred. Any exclusion in an insurance policy for intentional injury is applicable and there is no coverage.

Focusing upon the acts here, they are a sexual relationship between a minor and an adult; a coach and team member; a teacher and assistant. In the Court's judgment, society would not condone such a relationship. It has in fact now condemned it by the enactment in 1988 of a law which classifies these acts and conduct as criminal.[3] The facts in this case would support a finding that Calkins employed his position of trust and confidence in developing the relationship in this case.

---

[2]Allstate relied on additional exclusions as well. It also cited the fact that the policy covered damages for bodily injury, not emotional distress. We do not address these provisions because we resolve the coverage issue on the basis of the exclusion for intentional injury.

[3]The court's reference is to RCW 9A.44.093, enacted after the occurrence here. It reads:

"(1) A person is guilty of sexual misconduct with a minor in the first degree when the person has sexual intercourse with another person who is at least sixteen years old but less than eighteen years old and not married to the perpetrator, if the perpetrator is at least sixty months older than the victim, is in a significant relationship to the victim, and abuses a supervisory position within that relationship in order to engage in sexual intercourse with the victim."

Thus, the court inferred an intent to injure and held Mr. Calkins' conduct fell within the exclusion of the policy for bodily injury intentionally caused.

On appeal, Mr. Calkins and the Brattons assign error to the trial court's inference of intent. They argue that the cases in which the courts have inferred intent to injure involved nonconsensual, criminal conduct. We agree, but do not find the distinction controlling here.

In *Rodriguez v. Williams*, 107 Wn.2d 381, 386, 729 P.2d 627 (1986) an incest victim sued the perpetrator for damages. The perpetrator had a homeowner's insurance policy which excluded personal injury "expected or intended by the insured . . .". *Rodriguez*, at 382. The insurer denied coverage based upon this exclusion. *Rodriguez*, at 383. The trial court entered summary judgment for the insurer, holding the insured's subjective intent was immaterial. *Rodriguez*, at 383.

■ The Supreme Court noted the rule that exclusionary clauses are strictly construed against the insurer. *Rodriguez*, at 384 (citing *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 659 P.2d 509 (1983), *modified*, 101 Wn.2d 830, 683 P.2d 186 (1984)). However, the court further stated that the interpretation of an insurance policy is a question of law and the court must construe the policy in the way the average layman would understand it. *Rodriguez*, at 384 (citing *Farmers Ins. Co. v. Miller*, 87 Wn.2d 70, 549 P.2d 9 (1976)).

In considering the exclusionary clause for intentional injury, the court rejected the purely objective approach taken by the Court of Appeals. *Rodriguez*, at 386. The court held that the language of the policy itself, which stated that it is *the insured* who must intend the harm in order for the exclusion to apply, was inconsistent with any approach which judged intent from a reasonable person standard. *Rodriguez*, at 386.

But *Rodriguez* also refused to adopt a purely subjective standard. Under that approach, the subjective intent of the policyholder always controls. If he did not intend harm, the

insurance policy covers the injuries. *Rodriguez,* at 386. *See, e.g., Alabama Farm Bur. Mut. Cas. Ins. Co. v. Dyer,* 454 So. 2d 921 (Ala. 1984).

■ Instead, *Rodriguez* chose to follow a line of cases which have inferred an intent to harm in certain limited circumstances, even though an actual, subjective intent was absent. *Rodriguez,* at 387. *See, e.g., Linebaugh v. Berdish,* 144 Mich. App. 750, 376 N.W.2d 400 (1985). *Linebaugh,* which involved a claim for damages resulting from statutory rape, reasoned at page 761: "The Legislature . . . in making Linebaugh's alleged acts a crime certainly perceived that harm results to underaged persons engaging in sexual intercourse." Citing the fact that incest was a class B felony, *Rodriguez,* at 387, held that intent to injure should be inferred to the insured in sex abuse cases.

The Court of Appeals also has inferred intent to harm in cases involving sexual abuse. *See, e.g., Standard Fire Ins. Co. v. Blakeslee,* 54 Wn. App. 1, 771 P.2d 1172 (indecent liberties), *review denied,* 113 Wn.2d 1017 (1989); *Public Employees Mut. Ins. Co. v. Rash,* 48 Wn. App. 701, 740 P.2d 370 (1987) (stepfather sexually assaulted 9–year–old stepson); *Grange Ins. Ass'n v. Authier,* 45 Wn. App. 383, 725 P.2d 642 (1986) (indecent liberties), *review denied,* 107 Wn.2d 1024 (1987); *Western Nat'l Assur. Co. v. Hecker,* 43 Wn. App. 816, 719 P.2d 954 (1986) (forcible anal intercourse).

The Brattons and Mr. Calkins would limit the above holdings to acts which are criminal. We believe this distinction misses the controlling rationale of these opinions. It is not the existence of a criminal penalty which is dispositive; *Rodriguez* and the other cases cited focused on the reason the Legislature classified the act as criminal in the first place. Specifically, those courts recognized that implicit in the Legislature's decision to make an act a crime "is a determination that at least some harm is inherent in and inevitably results . . ." from that act. *Authier,* at 386 (quoting *Allstate Ins. Co. v. Kim W.,* 160 Cal. App. 3d 326, 332–33, 206 Cal. Rptr. 609, 613 (1984)).

As the trial court here pointed out, the statute criminalizing the conduct which Mr. Calkins allegedly committed, while enacted after the events in question, indicates that society views such behavior as "inevitably" resulting in harm. Certainly, the average person purchasing insurance would not believe he was paying for coverage for such acts, nor would he want to share that risk with other homeowner's policyholders. Thus, we hold that intent to harm should be inferred in this situation, even though the Legislature had not yet specifically enacted a law making Mr. Calkins' conduct a crime.

Finally, we note that Allstate moved pending appeal to supplement the record with excerpts from the deposition of the psychiatrist who treated Ms. Bratton. The Brattons and Mr. Calkins did not oppose the addendum. We therefore grant the motion. However, our resolution of the coverage issue does not rely on the psychiatrist's testimony.

The judgment is affirmed.

GREEN, A.C.J., and SHIELDS, J., concur.

Review denied at 115 Wn.2d 1024 (1990).