[No. 41946-3-I.    Division One.    June 7, 1999.]

AMERICAN ECONOMY INSURANCE COMPANY, *Appellant*, v. THE ESTATE OF JOSEPH G. WILKER, ET AL., *Respondents*.

*Keller Rohrback*, by *Laurence Ross Weatherly*, for appellant.

*Cook & Bartlett*, by *Robert Michael Bartlett* and *Colleen Marie Cook*, for respondents Doe and Roe.

*Wurdeman & Tesch, P.C.*, by *James Allen Conley*, for respondent Peale.

APPELWICK, J. — Joseph G. Wilker allegedly sexually abused three minor girls, S. Doe, C. Roe, and Jane Doe, who lived in his neighborhood. After Wilker's subsequent suicide, representatives of the minor girls sued Wilker's estate and his homeowner's insurer, American Economy Insurance Company (American Economy) for, inter alia, negligent infliction of emotional distress. Plaintiffs alleged that Wilker caused the minor girls emotional distress when he accidentally allowed them to observe him sexually abusing one of the girls. American Economy moved for summary judgment, which the trial court denied. American Economy now appeals.

Upon review of the record, we conclude that S. Doe's, C. Roe's, and Jane Doe's emotional distress injuries were not caused by an "occurrence" under the insurance policies, and that American Economy therefore has no duty to defend Wilker's estate or provide coverage for the girls' injuries. We reverse the trial court's denial of summary judgment.

The following evidence is undisputed. Over a period of several years, Joseph G. Wilker allegedly sexually molested S. Doe, C. Roe, and Jane Doe, three minor girls who lived in his neighborhood. The conduct began in approximately 1990 and continued until the fall of 1994. At the beginning of that time, the girls were about nine or ten years old.

Soon after he met the girls, Wilker directed a series of "grooming" behaviors toward them: He gave the girls cigarettes and alcohol, made suggestive comments about their bodies, and touched them inappropriately. In later years, Wilker showed the girls pornography, encouraged them to touch him, and exposed himself to them. Toward the end of this period, Wilker made C. Roe and Jane Doe engage in oral sex, and had intercourse with Jane Doe and S. Doe.

This appeal concerns those occasions on which one of the girls observed Wilker sexually abusing one of the other girls. The record contains accounts of two such incidents. On one occasion, C. Roe turned on the light in a darkened "cubbyhole" in Wilker's basement, and observed Wilker performing oral sex on Jane Doe. On another occasion, Jane Doe, who had been in the cubbyhole with Wilker and C. Roe, left briefly to get a glass of water. When she returned to the cubbyhole, she observed C. Roe performing oral sex on Wilker. According to respondents, Wilker did not intend the girls to observe these two events.

Respondents claim that S. Doe, C. Roe, and Jane Doe suffered emotional distress as a result of observing the sexual abuse encounters, and that the emotional distress caused physical symptoms.

Wilker's alleged conduct came to the attention of the

authorities, and he was arrested on September 1, 1994. He was criminally charged with two counts of rape of a child in the first and second degree and two counts of sexual molestation in the first and second degree. On December 28, 1994, Wilker committed suicide.

Representatives of the minors filed two lawsuits in Snohomish County against Wilker's estate and Wilker's homeowner's insurer, American Economy. The lawsuits alleged various causes of action, including sexual assault, battery, and negligence. The negligence claims are based on the theory that Wilker negligently breached a duty of care toward S. Doe, C. Roe, and Jane Doe by engaging in conduct with another minor in their presence which inflicted emotional harm upon them.

American Economy filed a declaratory judgment action seeking a ruling that there was no coverage under the homeowner's policies for any of the claims and that American Economy had no duty to defend the estate. The trial court granted American Economy's motion for summary judgment in part, ordering that there was no coverage for, or duty to defend, the Wilker estate with respect to any of the claims except those for negligence. American Economy appeals the trial court's denial of summary judgment for the negligence claims.

On appeal, American Economy argues that it has no duty to defend the estate or provide coverage for the emotional distress injuries because 1) Wilker intended to injure S. Doe, C. Roe, and Jane Doe and, thus, the injuries were not caused by a coverable "occurrence" under the policies; and 2) the injuries do not constitute "bodily injury" under the policies.

## ANALYSIS

In reviewing a summary judgment order, we evaluate the matter de novo, performing the same inquiry as the trial court. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). The appellate court considers the facts submitted and all reasonable inferences from those facts in the

light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c); *Kruse*, 121 Wn.2d at 722.

A. Whether the Events Were an "Occurrence"

■ The insurance policies at issue in this appeal provide coverage to an insured for "personal liability" arising from personal injury damages caused by an "occurrence." An "occurrence" is essentially defined in the policies as: "an accident, including exposure to conditions, which results, during the policy period, in personal injury or property damage." The policies contain an additional clause that excludes coverage for injuries that are "expected or intended by the insured."

In Washington, for the purposes of determining insurance coverage, an "accident" is defined as an "unusual, unexpected, and unforeseen happening." *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 95, 776 P.2d 123 (1989). Moreover, "an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual." *Grange*, 113 Wn.2d at 96 (quoting *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. No. 81*, 20 Wn. App. 261, 263-64, 579 P.2d 1015 (1978)).

■ American Economy argues that it has no duty to provide coverage for the emotional distress injuries because Wilker intended to harm S. Doe, C. Roe, and Jane Doe as a matter of law. Respondents concede that Wilker intended to harm the direct victims of abuse. Nonetheless, respondents claim that Wilker did not expect or intend S. Doe, C. Roe, and Jane Doe to observe him in the act of abusing one of the other girls. They argue that an intent to injure the child witnesses cannot be inferred as a matter of law.

Washington courts routinely hold that a person who sexu-

ally abuses a child intends to injure the victim, regardless of the abuser's actual subjective intent. *See, e.g., Rodriguez v. Williams*, 107 Wn.2d 381, 387, 729 P.2d 627 (1986); *Allstate Ins. Co. v. Calkins*, 58 Wn. App. 399, 404, 793 P.2d 452 (1990). This is because children inevitably sustain injury from sexual abuse. *Rodriguez*, 107 Wn.2d at 387; *Calkins*, 58 Wn. App. at 404. We infer an intent to cause emotional distress injury as well as physical injury from acts of sexual abuse. *St. Michelle v. Robinson*, 52 Wn. App. 309, 316, 759 P.2d 467 (1988).

To our knowledge, however, no Washington court has held that an intent to harm can be inferred when a child witnesses the sexual abuse of another child. Nonetheless, we hold as a matter of law that Wilker intended to harm the child witnesses in this case; thus, the events at issue do not constitute an "accident" or "occurrence" under the insurance policies.

When viewed in the light most favorable to respondents, the evidence unmistakably shows that it was neither unforeseeable nor unexpected that S. Doe, C. Roe, and/or Jane Doe would witness Wilker abusing one of the other girls. Wilker engaged in abuse knowing that one of the other girls was nearby, and took few and limited precautions to avoid being seen by the other girl. In the first incident in the record, C. Roe and Jane Doe were playing cards together in the "cubbyhole"[1] in Wilker's basement where much of the abuse occurred. Wilker entered and turned off the light. C. Roe asked him to turn the light back on. After "about a minute," C. Roe turned the light on herself, and witnessed Wilker performing oral sex on Jane Doe. On the second occasion, Jane Doe, C. Roe and Wilker were again together in the cubbyhole. Jane Doe left the cubbyhole briefly to get a glass of water from the bathroom. When she returned, she witnessed C. Roe performing oral sex on Wilker. C. Roe stated that she had

---

[1]The "cubbyhole" was apparently an unused shower stall in the bathroom of Wilker's basement, which Wilker equipped with blankets, a pillow, and a light.

only been engaged in this activity for "a couple minutes" before Jane Doe returned.

Even if the evidence showed that Wilker did not know that one of the child witnesses was nearby, we would nonetheless infer that Wilker intended to injure these child witnesses as a matter of law. Washington courts have not had occasion to address the issue, but courts in other states have held that when a sex abuser's allegedly negligent acts are an integral part of a continuous pattern of sexual abuse, the abuser acted with an intent to injure.

In apparently the first such case, *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 846 P.2d 792, 17 Cal. Rptr. 2d 210 (1993), plaintiff sued her band teacher for injuries suffered when the teacher negligently embarrassed her by, for example, pulling her out of class or having her sit on his lap in front of other students. The band teacher also sexually molested plaintiff. The California Supreme Court stated that defendant's insurer would have no duty to cover plaintiff's injuries if the negligent acts "occurred in such close temporal and spatial proximity to the molestation as to *compel* the conclusion that they are inseparable from it." *Horace Mann*, 4 Cal. 4th at 1084.

Other states have followed California's lead. In *Nodak Mutual Ins. Co. v. Heim*, 1997 ND 36, 559 N.W.2d 846, 852 (1997), the North Dakota Supreme Court held that "if an insured's alleged negligent acts are inextricably linked with a continuous pattern of intentional molestation, an intent to harm is inferred from the insured's alleged negligent acts." There, an uncle who repeatedly molested his nephews also allegedly negligently touched their genitals on several other occasions. *Nodak Mutual*, 559 N.W.2d at 848. *See also Allstate Ins. Co. v. S.F.*, 518 N.W.2d 37, 41 (Minn. 1994) (denying coverage because insured's allegedly negligent action of leaving plaintiff to be sexually assaulted by two friends was "part of an overall intentional plan on the part of the three men to use plaintiff for their sexual pleasure.").

Thus, if an abuser's allegedly negligent acts toward a victim are close in space and time, or inextricably linked, to

a continuous pattern of sexual abuse of the victim, an intent to injure can be inferred as a matter of law. Here, Wilker engaged in a continuous and increasingly disturbing pattern of sexual abuse with all three of the minor girls. If not for this pattern of abuse, neither S. Doe, C. Roe, nor Jane Doe would have been on hand to observe Wilker abusing one of the other girls. This evidence is sufficient for us to conclude as a matter of law that Wilker intended to harm these child witnesses.

A child is inevitably harmed when she witnesses the sexual abuse of another child. Because it was neither unforeseen nor unexpected that S. Doe, C. Roe, and/or Jane Doe would witness Wilker abusing one of the other girls, we infer that Wilker intended to harm the witnesses as a matter of law. We therefore hold that American Economy has no duty to defend Wilker's estate or provide coverage for the minors' injuries.

B. Whether the Injuries Were "Bodily Injuries"

In the alternative, American Economy argues that it has no duty to provide coverage because the child witnesses' emotional distress injuries do not constitute "bodily injury" under the insurance policies. Because we hold that Wilker intended to harm the witnesses, we need not reach this issue and decline to consider it.

Reversed.

COLEMAN and WEBSTER, JJ., concur.

Review denied at 139 Wn.2d 1015 (2000).