**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**JAN 8 2002**

**PATRICK FISHER**
**Clerk**

LISA COLE; JOHN SNYDER,

      Plaintiffs - Appellants,

v.

STATE FARM FIRE & CASUALTY
COMPANY,

      Defendant - Appellee.

No. 01-1042
(D.C. No. 99-B-46)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McWILLIAMS**, and **LUCERO**, Circuit Judges.

Plaintiffs-Appellants Lisa Cole and John Snyder appeal from the grant of

summary judgment in favor of Defendant-Appellee State Farm Fire & Casualty

Company ["State Farm"]. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Because we find that the district court properly relied on Bohrer v. Church Mut.

Ins. Co., 965 P.2d 1258 (Colo. 1998) and that any covered conduct occurred in

such a close temporal and spatial relationship to the excluded conduct that the

covered conduct is inseparable from and barred by the excluded conduct, we

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

affirm.

Background

In this insurance coverage and bad faith action, Plaintiff Snyder (the insured) and Plaintiff Cole (a victim of Mr. Snyder's attempted sexual assault) contend that State Farm owed Mr. Snyder a duty to defend in a civil action brought by Ms. Cole against Mr. Snyder. In the civil action, Ms. Cole alleged:

> 3. On June 3, 1995, [Mr. Snyder] told [Ms. Cole] he would take [Ms. Cole] back to a bar where [Ms. Cole's] sister and [Ms. Cole's] belongings were. After [Ms. Cole] got into [Mr. Snyder's] truck, [Mr. Snyder] advised [Ms. Cole] that he was taking her to his place in Rist Canyon where he wanted to have sex.
>
> 4. [Ms. Cole] told [Mr. Snyder] to take her back to the bar or to just let her out of his truck there. [Mr. Snyder] refused.
>
> 5. Rather, [Mr. Snyder] sped up and became agitated, actually running stop signs.
>
> 6. [Mr. Snyder] then grabbed [Ms. Cole] by the hair on the back of her head and shoved her face into his crotch. He threatened to perform certain sexual acts to [Ms. Cole] until she died.
>
> 7. In fear, [Ms. Cole] grabbed the shifter and knocked the truck out of gear. When [Mr. Snyder] reached for the shifter, [Ms. Cole] kicked the door open and jumped out of [Mr. Snyder's] moving vehicle in order to flee from him. Terrified, [Ms. Cole] ran to a nearby residence for help.

Aplt. App. at 70 ¶¶ 1-7. Mr. Snyder was convicted in a bench trial in state district court pursuant to Colo. Rev. Stat. § 18-2-101 and § 18-3-402(1)(a). Aplt. App. at 59. He was sentenced to ten years probation with various conditions. Aplt. App.

at 60.  In the criminal trial, he was acquitted of second degree kidnaping and sexual assault in the third degree.  Aplt. App. at 58.  Mr. Snyder's conviction was affirmed by the Colorado Court of Appeals.  Aplt. App. 62.

The state district judge made various findings and conclusions in connection with Mr. Snyder's criminal trial.  After Ms. Cole got into Mr. Snyder's Toyota pickup, the two had a discussion about where Mr. Snyder lived.  Thereafter,

> John Snyder put his right arm around Lisa Cole, pulled her close to him and then grabbed with his right hand the hair on the back of Lisa Cole's head, stating, "you are going to suck my dick" and proceeded to push Lisa Cole's face down to his crouch [sic] area with Lisa Cole resisting.  John Snyder further stated to Lisa Cole that "I'm going to fuck you to death."  These movements and statements occurred spontaneously without any warning and within a few seconds.  In response to [John Snyder's] actions and words Lisa Cole spontaneously pulled away from [John Snyder], opened the door and jumped out of [John Snyder's] vehicle . . .

Aplt. App. 56-57.

Ms. Cole's civil action against Mr. Snyder alleged extreme and outrageous conduct, negligence, negligent infliction of emotional distress, negligent misrepresentation causing physical harm, and sexual assault.  Aplt. App. at 70.  Because Mr. Snyder was insured at the time of the incident under the terms of a personal liability umbrella policy with a $1 million liability limit, State Farm was notified of the claim.

The State Farm umbrella policy provides in pertinent part:

**1. Coverage L - Personal Liability.** If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** minus the **retained limit.**

**2. Defense and Settlement.**
. . . .
b. When the claim or suit is covered by this policy, but not covered by any other policy available to you:
(1) we will defend the suit against you;

An endorsement to the policy defines loss as:

a. an accident ... which results in **bodily injury** or **property damage** during the policy period ...

b. the commission of an offense, or series of similar or related offenses, which result in **personal injury** during the policy period.

The following definitions are pertinent:

**"bodily injury"** means physical injury, sickness, disease, emotional distress or mental injury to a person....

**"personal injury"** means injury caused by one or more of the following offenses:
a. ... false imprisonment,....

State Farm reserved its rights as to coverage. Aplt. App. at 51-52

(emphasis in the original). After initially agreeing to provide a defense with

reservation of rights to seek reimbursement of fees and costs if it were ultimately

determined that there was no coverage, State Farm determined that there was no

coverage based upon the following policy exclusions:

2. for **bodily injury** or **property damage:**

a.      which is either expected or intended by you; or

b.      to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

16. for **personal injury** when you act with specific intent to cause harm or injury.

Aplt. App. 52. After State Farm withdrew its defense, Mr. Snyder entered into a compromise settlement with Ms. Cole under which he was required to pay her $50,000.00 and to engage in an arbitration proceeding, which resulted in a judgment being entered against him in the amount of $413,784.32. Aplt. App. at 3.

Ms. Cole and Mr. Snyder then commenced this coverage and bad faith action against State Farm in state court. State Farm removed the case to federal court. On cross-motions for summary judgment and partial summary judgment, the district court dismissed the entire complaint with prejudice, holding that State Farm owed Mr. Snyder no duty to defend.

On appeal, Plaintiffs contend that the district court erred (1) in applying Bohrer v. Church Mut. Ins. Co., 965 P.2d 1258 (Colo. 1998), to decide that State Farm had no duty to defend, (2) in determining as a matter of law that exclusion 16 of the policy barred potential coverage for the claim of false imprisonment, (3) in granting summary judgment based upon exclusion 2, and (4) in granting summary judgment on the ground that the negligence-based claims against Mr. Snyder failed to trigger a duty to defend.

Discussion

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Kendrick v. Penske Transp. Services, Inc., 220 F.3d 1220, 1225 (10th Cir. 2000) (citations omitted). Summary judgment is proper if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The district court correctly recognized the general differences between the broader duty to defend and the duty to indemnify. As long as a complaint alleges any facts that might fall within policy coverage, an insurer is obligated to defend, regardless of the ultimate decision on coverage. Compass Ins. Co. v. Littleton, 984 P.2d 606, 613 (Colo. 1999) (en banc). To avoid the duty to defend, an insurer has a heavy burden–it must establish that "there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." Id. at 614 (quoting Hecla Mining Co. v. New Hampshire Insurance Co., 811 P.2d 1083, 1090 (Colo. 1991) (en banc)).

We first determine that State Farm does not have a duty to defend Mr. Snyder against loss resulting from the attempt to commit sexual assault in the first degree. The district court held that sexual assault is excluded from the policy, and we agree. Aplt. App. at 157. At a minimum, such conduct is barred by the

exclusion for bodily injury which is either expected or intended by the insured (exclusion 2.a). Although the Supreme Court of Colorado has established that an intent to harm can be inferred as a matter of law from sexual misconduct with a child, Allstate Ins. Co. v. Troelstup, 789 P.2d 415, 419 (Colo. 1990) (en banc), no such finding has been made when the victim is an adult. Without establishing a general rule, this court finds based on the facts as pled by Ms. Cole and found by the state district court in the criminal trial that there is no genuine issue as to whether Mr. Snyder intended to harm Ms. Cole. "[Mr. Snyder] ... grabbed Ms. Cole by the hair on the back of her head and shoved her face into his crotch. He threatened to perform sexual acts to [Ms. Cole] until she died." Aplt. App. at 70 ¶ 6. We agree with the district court that this sexual assault was committed with the intent to cause bodily injury to Ms. Cole. We find unpersuasive Plaintiffs' argument that the district court "overstated the contents of paragraph 6 .... Paragraph 6 did not speak to Snyder's intent to cause injury; instead, it merely recited a threatening statement that Snyder averedly made to Cole." Aplt. Br. at 29. This statement was more than a threat. It was made simultaneously with an attempt by Mr. Snyder to sexually assault Ms. Cole. Furthermore, it is not material that the bodily injury Ms. Cole actually suffered was different in kind from that which Mr. Sndyer intended to inflict on her. Butler v. Behaeghe, 548 P.2d 934, 938 (Colo. App. 1976).

Recovery for attempted sexual assault is also unambiguously barred by the exclusion for willful and malicious acts (exclusion 2.b). Sexual assault in the first degree requires the accused to have acted "knowingly."[1] To be convicted of criminal attempt, a defendant must have acted with the kind of culpability otherwise required for commission of an offense.[2] Acting knowingly is the equivalent of willful conduct and the Colorado Criminal Code recognizes this by defining these culpable mental states in identical terminology. Colo. Rev. Stat. § 18-1-501(6); Colorado v. Marcy, 628 P.2d 69, 79-80 (Colo. 1981) (en banc). Because the culpable mental state was finally decided in the previous criminal trial and appeal, Aplt. App. 55-69, Ms. Cole and Mr. Snyder cannot relitigate it so as to avoid the willful and malicious act exclusion of an insurance policy. Having

---

[1] Colo. Rev. Stat. § 18-3-402(1) states in relevant part:

> Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if: (a) The actor causes submission of the victim by means of sufficient consequence reasonably calculated to cause submission against the victim's will;

[2] Colo. Rev. Stat. § 18-2-101(1) states in relevant part:

> A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense.

reviewed the facts of this case as pled by Ms. Cole[3] and as found by the state district court,[4] we find that there is no genuine material issue as to whether Mr. Snyder acted with malice. Furthermore, Ms. Cole stated under her claim for exemplary damages that "The injuries that [Mr. Snyder] caused to [Ms. Cole] were attended by circumstances of malice and willful and wanton conduct." Aplt. App. at 73. The attempted sexual assault is, therefore, excluded conduct under 2.b.

The district court also held that it was not possible to separate the alleged false imprisonment[5] from the sexual assault, and therefore, no duty to defend existed for either. In Bohrer v. Church Mutual Ins. Co, 965 P.2d 1258, 1264-65 (Colo. 1998) (en banc), the Colorado Supreme Court recognized that damages from covered and excluded conduct may become so intertwined as to render them

---

[3] "[Mr. Snyder] threatened to perform certain sexual acts to [Ms. Cole] until she died." Aplt. App. at 70 ¶ 6. (emphasis added).

[4] "John Snyder further stated to Lisa Cole that 'I'm going to fuck you to death.'"Aplt. App. at 57.

[5] The elements for the tort of false imprisonment are:

(1) The defendant intended to restrict the plaintiff's freedom of movement;
(2) The defendant, directly or indirectly, restricted the plaintiff's freedom of movement for a period of time, no matter how short; and
(3) The plaintiff was aware that her freedom of movement was restricted.

Colo. Jury Instr., Civil 21:1 (4th ed.); see also Goodboe v. Gabriella, 663 P.2d 1051, 1055-56 (Colo. Ct. App. 1983).

inseparable, and beyond coverage based upon an exclusion. Conversely, "[w]hen the covered conduct causes injury resulting in damages, and the excluded conduct has not occurred in close temporal and spacial relationship to the covered conduct, coverage is not defeated by the exclusion." Id. The Colorado Supreme Court relied upon Horace Mann Ins. Co. v. Barbara B., 846 P.2d 792, 797 (Cal. 1993) (in bank), where the separability rule was applied in a duty to defend case. There, the insurer had a duty to defend because the damages from the covered and excluded causes were not in such close temporal and spatial proximity to compel the conclusion that they were inseparable. Bohrer, 965 P.2d at 1265.

Plaintiffs' argument that the inseparability rule cannot be invoked in a duty to defend case is belied by the Bohrer court's reliance upon Horace Mann. As for the claim that the district court in this case engaged in impermissible fact finding on summary judgment, the district court relied upon the complaint and the joint Stipulation of Facts, Aplt. App. at 35, submitted by the parties. It is the legal characterization of those undisputed facts that matters here, and we reject the suggestion that the separability inquiry is immune from summary judgment when the issue is the duty to defend. In Horace Mann, summary judgment on this issue was improper because the case reached the California Supreme Court "in somewhat of a factual vacuum," and the record was "devoid of evidence which establishes the chronology or sequence of events comprising the alleged [covered]

misconduct or that these actions were integral to the molestation [uncovered conduct]." 846 P.2d at 797. That is not the case here.

The complaint quoted above largely mirrors the findings in the state criminal trial. According to the complaint, Mr. Snyder announced his intention for sex and immediately followed through on it after declining to return Ms. Cole to the bar or to let her out of his pickup truck. Mr. Snyder was convicted of a knowing attempt to commit first degree sexual assault. Merely because false imprisonment could theoretically occur in the absence of the conduct forming the basis of that conviction does not trump the actual facts. Restraint was an integral part of the attempt. And as the state district court found in the criminal case, the movements and statements here occurred "spontaneously without any warning and within a few seconds." Aplt. App. at 57. No genuine issue of material fact exists as to whether the false imprisonment and the sexual assault occurred in such a close temporal and spatial relationship that they are inseparable. Coverage for any false imprisonment is, therefore, defeated by the exclusion of the sexual assault.

Because we find that Ms. Cole's false imprisonment claim against Mr. Snyder is excluded from policy coverage by exclusions 2.a and 2.b, it is unnecessary for us to address whether the claim is also excluded by exclusion 16, as discussed in Plaintiffs' second argument on appeal.

Finally, Plaintiffs contend that the district court erred in granting summary judgment on the basis that the negligence-based claims against Mr. Snyder failed to trigger a duty to defend. We agree with the district court that Ms. Cole's conclusory allegations of negligence are inadequate to trigger the duty to defend given the crime committed by Mr. Snyder which is the factual predicate of all Ms. Cole's claims. Aplt. App. at 160-62. Although Plaintiffs seem to concede on appeal that merely including negligence-based claims is insufficient to trigger a duty to defend, they urge that allegations of injury at the hands of Mr. Snyder are enough. Aplt. Br. at 31. We are not persuaded. Furthermore, this court finds that if any negligent conduct did occur it is inseparably intertwined with the sexual assault and, therefore, barred by exclusions 2.a and 2.b. See American Economy Ins. Co. v. Wilker, 977 P.2d 677, 681 (Wash. Ct. App.1999) (holding an intent to injure will be inferred if alleged negligent acts occur close in space and time or are inextricably linked to a continuous pattern of sexual abuse); Nodak Mutual Ins. Co. v. Heim, 559 N.W.2d 846, 852 (N.D. 1997) (noting that facts must be viewed in their entirety, not antiseptically and microscopically examined

and an intent to harm will be inferred if alleged negligent acts are inextricably linked with a continuous pattern of intentional sexual abuse).

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge