FILED
United States Court of Appeals
Tenth Circuit

April 18, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NIKOS HECHT,

      Plaintiff Counterdefendant -
Appellant,

v.

GREAT NORTHERN INSURANCE
COMPANY, d/b/a Chubb,

      Defendant Counterclaimant -
Appellee.

No. 18-1244
(D.C. No. 1:17-CV-02364-RM-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Nikos Hecht appeals the district court's grant of summary judgment in favor of

his insurer, Great Northern Insurance Company (Chubb), which denied Hecht's

claims based on policy exclusions for intentional acts and abuse committed by its

insured. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district

court's judgment.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

This case stems from a civil suit brought against Hecht by his ex-girlfriend, Brooke Warfel. *See Warfel v. Hecht*, No. 1:16-cv-686-MSK-KLM (D. Colo. filed Mar. 23, 2016). According to the *Warfel* complaint, Hecht was physically and emotionally abusive, exhibiting behavior "indicative of the typical patterns of domestic violence and abuse." Aplt. App., Vol. 1 at 102. Although Warfel generally averred that Hecht was controlling and "used his wealth time and again to hurt and manipulate her," *id.* at 100, her allegations principally focused on two factual events in which he coerced her to have an abortion against her physician's advice and falsely imprisoned her in a remote cabin.

Regarding the abortion, Warfel alleged that after the couple became pregnant, Hecht subjected her to "constant and unrelenting pressure" to terminate the pregnancy. *Id.* at 103. She discussed the procedure with her physician in Aspen, Colorado, but was advised to wait because it was "too early," the pregnancy might be ectopic, and proceeding with the abortion could have "devastating effects." *Id.* Warfel told Hecht that she would go forward with the abortion in three to four weeks, but because they had plans to travel to Mexico, "[h]e insisted that she allow a 'doctor' he knew in Mexico to terminate the pregnancy." *Id.* He allegedly promised to marry her but threatened "that if she did not go through with the procedure on his schedule, he would have all her stuff packed in garbage bags, taken out of his house, dumped at her door, and that would be the end of their relationship." *Id.*

2

Warfel allegedly agreed to have the abortion in Mexico by the individual known to Hecht, though this person turned out to be "closer to a nurse practitioner, . . . not an ob/gyn as promised by Hecht"; the individual "also happened to be Hecht's source of controlled substances in Mexico." *Id.* Although this provider gave Warfel drugs to terminate the pregnancy, causing "excruciating abdominal pain," the procedure resulted in a failed abortion. *Id.* at 104. Consequently, when Warfel returned to Aspen, she "had to undergo a second chemical termination to complete the one initiated in Mexico a month earlier." *Id.* She allegedly "suffered excessive bleeding, more pain, and the psychological trauma of undergoing a botched abortion." *Id.*

Regarding the cabin incident, the *Warfel* complaint alleges that in July 2015, while Warfel recovered from a second abortion that she underwent at Hecht's insistence, the couple spent three nights in a remote cabin. On the last night, Hecht allegedly lost his temper, prompting her to start packing her clothes. He "became irate," threw her clothes all over the room, refused to let her leave, and "threatened to punch her in the face." *Id.* at 116. As the situation escalated, Hecht allegedly threatened to kill her mother and "to get[] a big black n***er to cut off [her] ring on her finger and knock her teeth out." *Id.* at 117 (brackets and internal quotation marks omitted). Warfel attempted to diffuse the situation by apologizing, but Hecht began asking how many past sexual partners she had and what types of sexual activities she had engaged in. Warfel managed to call 911, but Hecht allegedly lied to law enforcement about why she called. He then choked her as he demanded to know how

3

many sexual partners she had.  He also "pushed her so hard that she fell and hit her head on the concrete floor" and physically prevented her from leaving the cabin until the next day.  *Id.* at 122 (brackets and internal quotation marks omitted).

After Warfel was able to leave the cabin, her injuries were documented at a hospital; Hecht eventually pleaded guilty in Colorado state court to a domestic violence charge.  According to the *Warfel* complaint, the state court judge in Hecht's criminal proceeding characterized the events at the cabin as "a night of terror," telling Hecht the court recognized "the obsessive nature of . . . the power and control and the abuse that [he] exhibited."  *Id.* (internal quotation marks omitted).  Based on these and other allegations, Warfel asserted claims for assault, battery, negligent and intentional infliction of emotional distress, false imprisonment, and negligence.

Hecht, who was insured by Chubb under two policies providing personal and excess liability coverage, submitted the *Warfel* complaint to Chubb for defense.  In a letter denying coverage, Chubb acknowledged that, under the terms of the policies, "the injuries alleged by Warfel do qualify as **personal injury**, caused by an **occurrence**, as defined."  *Id.* at 264.  However, Chubb concluded there was no duty to defend or indemnify because the *Warfel* allegations fell within policy exclusions for "Intentional Acts" and "Molestation, misconduct or abuse."  *Id.* (italics omitted).

Hecht settled his lawsuit with Warfel and subsequently commenced this litigation against Chubb.  In a four-count complaint, Hecht asserted claims for 1) breach of contract for refusing to provide defense coverage; 2) breach of contract for refusing to indemnify settlement costs; 3) unreasonable delay and/or denial of

4

payment under state law; and 4) bad faith breach of insurance contract. Chubb answered the complaint and sought a declaratory judgment that it owed no coverage to Hecht because the *Warfel* complaint included allegations of criminal and intentionally tortious conduct for which there was no duty to defend or indemnify. Hecht moved for partial summary judgment on the duty-to-defend and unreasonable-delay/denial-of-payment claims, but the district court denied his motion, ruling there was no duty to defend and thus no basis for claiming an unreasonable delay or denial of payment. The court also directed Hecht to show cause why judgment should not enter in Chubb's favor under Fed. R. Civ. P. 56(f) on all remaining claims, given its conclusion that there was no duty to defend. In response, Hecht acknowledged, in light of the court's determination that there was no duty to defend, that judgment should enter on the remaining claims. The court thus granted summary judgment to Chubb on the outstanding claims, and Hecht appealed.

## II

"We review the district court's grant of summary judgment de novo, using the same legal standard applied by the district court." *Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1192 (10th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a diversity suit such as this, we apply the substantive law of the forum state, here, Colorado. *See Blackhawk-Cent. City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000).

5

Our threshold—and dispositive—inquiry is whether Chubb had a duty to defend, because absent a duty to defend, Hecht cannot prevail on any other claim. *See Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 920-21 (10th Cir. 2008) ("Under Colorado law, an insurer's duty to defend is broader than the duty to indemnify. If there is no duty to defend, then there is no duty to indemnify."). The existence of an insurer's duty to defend is a legal question that we review de novo. *AIMCO*, 593 F.3d at 1192-93. We determine whether there is a duty to defend by evaluating the underlying complaint for any factual allegations "'that might fall within the coverage of the policy.'" *Id.* (quoting *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991)). "In the duty to defend context, the 'complaint rule' operates to cast a broad net, such that when the underlying complaint alleges *any facts* or claims that might fall within the ambit of the policy, the insurer must tender a defense." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003). "[I]f the underlying complaint asserts more than one claim, a duty to defend against all claims asserted arises if any one of them is arguably a risk covered by the pertinent policy." *Blackhawk-Cent. City*, 214 F.3d at 1189 (citing *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998)).

The policies here, styled "Masterpiece" policies, have different loss requirements and coverage amounts, but their relevant language regarding coverage is substantially the same:

> We cover damages a covered person is legally obligated to pay for personal injury or property damage . . . caused by an occurrence, unless stated otherwise or an exclusion applies.

6

Aplt. App., Vol. 1 at 63 (personal liability policy); *see also id.* at 84 (excess liability coverage).[1] An "occurrence" is defined as "an accident or offense to which this insurance applies." *Id.* at 63, 84. "Personal injury" is defined as "the following injuries, and resulting death:"[2]

- bodily injury;
- shock, mental anguish, or mental injury;
- false arrest, *false imprisonment*, or wrongful detention;
- wrongful entry or eviction;
- malicious prosecution or humiliation; and
- libel, slander, defamation of character, or invasion of privacy.

*Id.* at 63, 85 (emphasis added). Additionally, the policies provide defense coverage, stating, "We will defend a covered person against any suit seeking covered damages for personal injury. . . ." *Id.* at 65, 89. Finally, the policies contain a list of exclusions, including the two relied upon by Chubb to deny coverage:

**Intentional acts.** We do not cover any damages arising out of a willful, malicious, fraudulent or dishonest act or any act intended by any covered person to cause personal injury or property damage, even if the

---

[1] The excess liability policy states:

We cover damages a covered person is legally obligated to pay for personal injury or property damage, caused by an occurrence:
- in excess of damages covered by the underlying insurance; or
- from the first dollar of damage where no underlying insurance is required under this policy and no underlying insurance exists; or
- from the first dollar of damage where underlying insurance is required under this policy but no coverage is provided by the underlying insurance for a particular occurrence,

unless stated otherwise or an exclusion applies.

Aplt. App., Vol. 1 at 84.

[2] The parties do not discuss the policy language, "and resulting death."

injury or damage is of a different degree or type than actually intended or expected. But we do cover such damages if the act was intended to protect people or property unless another exclusion applies. An intentional act is one whose consequences could have been foreseen by a reasonable person. . . .

**Molestation, misconduct or abuse.** We do not cover any damages arising out of any actual, alleged or threatened:
- sexual molestation;
- sexual misconduct or harassment; or
- abuse.

*Id.* at 74, 92.

The district court considered Warfel's negligence and false imprisonment claims as those most likely to trigger coverage but concluded that the factual allegations underlying these claims fell within the exclusions.[3] In particular, the court determined the factual allegations relating to the abortion evinced intentional conduct that fell under the exclusion for intentional acts, while the events at the cabin qualified as abuse under the molestation, misconduct, or abuse exclusion. We agree with the district court's analysis and affirm for substantially the same reasons.

A.  *The Allegations Relating to the Abortion Reflect Intentional Conduct*

The district court correctly determined that the factual allegations relating to the abortion reflect Hecht's intentional conduct. The *Warfel* complaint alleged that he subjected her to "constant and unrelenting pressure" to have the abortion, and, against her physician's advice to wait, "insisted that she allow a 'doctor' he knew in

_____

[3] The court considered the claim for negligent infliction of emotional distress in tandem with the negligence claim. Hecht follows this approach on appeal, so we do as well.

8

Mexico to terminate the pregnancy" during their planned trip. *Id.* at 103. Although Warfel expressed reservations and told him the abortion would have to wait "to ensure her safety," Hecht threatened to pack her belongings into garbage bags and end their relationship "if she did not go through with the procedure on his schedule." *Id.* These allegations depict intentional conduct excluded by the intentional-acts exclusion.

Hecht contends the district court expanded the intentional-acts exclusion by disregarding the allegations of negligence, but this contention misapprehends the district court's analysis.[4] Although the *Warfel* complaint alleges Hecht was negligent in subjecting her to an unqualified abortion provider, the district court recognized "'that damages from covered and excluded conduct may become so intertwined as to render them inseparable, and beyond coverage based upon an exclusion.'" *Id.*, Vol. 2 at 414 (quoting *Cole v. State Farm Fire & Cas. Co.*, 25 F. App'x 791, 796 (10th Cir. 2002) (unpublished)).[5] *Cole* considered an insurer's duty to defend based on potential coverage for false imprisonment when the insured attempted to sexually assault the claimant in his truck. 25 F. App'x at 793-94. Applying Colorado law, we determined the false imprisonment and the sexual assault occurred in such close

---

[4] Contrary to his position in this litigation, Hecht argued in the *Warfel* suit that the factual allegations reflected only intentional conduct. *See* Aplt. App., Vol. 2 at 413 n.7 ("The [*Warfel*] Complaint does not contain any allegations to support a claim of negligence or negligent infliction of emotional distress; instead, all of the allegations assert intentional conduct." (internal quotation marks omitted)).

[5] We may consider non-precedential, unpublished decisions for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A).

temporal and spatial proximity as to render them inseparable; thus, any potential

coverage under the insured's policy for the false imprisonment was defeated by

exclusions for the sexual assault, which constituted a willful and malicious act. *Id.* at

796-97. We further held that any potential coverage for negligence-based claims was

defeated by the sexual assault because "if any negligent conduct did occur it is

inseparably intertwined with the sexual assault and, therefore, barred by [the policy]

exclusions[.]" *Id.* at 797.

So, too, here. As the district court aptly observed, "the single negligent choice

of selecting a medical provider was merely another link in the chain of otherwise

intentional actions [Hecht] took when he forced Warfel to get an abortion." Aplt.

App., Vol. 2 at 416. Hecht would have us excise his negligence in choosing an

abortion provider from the rest of his intentional acts aimed at coercing Warfel to get

the abortion against her doctor's advice, all of which—in the language of the

intentional-acts exclusion—was conduct "whose consequences could have been

foreseen by a reasonable person," *id.*, Vol. 1 at 74, 92. But because the alleged

negligence was inseparably intertwined with his intentional conduct, he cannot

divorce his negligence from the rest of his conduct, and thus, the exclusion applies.

*See Cole*, 25 F. App'x at 797; *Browning v. Am. Family Mut. Ins. Co.*, 396 F. App'x

496, 504 (10th Cir. 2010) (unpublished) (rejecting coverage under Colorado law for

negligence based on allegations of inseparable intentional conduct).

Our conclusion is in accord with *Bohrer v. Church Mutual Insurance*

*Company*, 965 P.2d 1258 (Colo. 1998). In *Bohrer*, the Colorado Supreme Court

10

determined that coverage solely for a youth minister's initial counseling activities, which occurred over some twenty-one months, was not defeated by an exclusion for sexual misconduct because the initial period of counseling did not occur in close temporal and spatial proximity to the minister's sexual misconduct. *Id.* at 1263-64. Yet once the counseling activities became inseparably intertwined with the minister's sexual misconduct, the exclusion for sexual misconduct defeated coverage for the counseling activities during this latter period of time (even though coverage existed for the initial twenty-one month period). *See id.* at 1264-65. Hecht's reliance on *Bohrer* is misplaced because he does not identify a distinct period of time or point of demarcation between his negligence in choosing an abortion provider and his intentional acts to coerce Warfel to have the abortion against her doctor's advice. Rather, the allegations here are analogous to the inseparable conduct that occurred during the latter period in *Bohrer*, confirming our conclusion that the exclusion applies.[6]

---

[6] Hecht attempts to salvage his negligence argument by citing portions of the magistrate judge's report and recommendation issued in the *Warfel* litigation. *See, e.g.*, Aplt. Br. at 11-12, 30. But our analysis focuses on the factual allegations recited in the *Warfel* complaint, not the magistrate judge's analysis of its claims. *See United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 960-61 (10th Cir. 2011) (recognizing that under Colorado law, "an insurer's duty to defend arises *solely* from the complaint in the underlying action" and that the Colorado Supreme Court has not endorsed either of two narrow exceptions crafted by this court permitting consideration of an insured's criminal conviction and a set of factually related complaints (internal quotation marks omitted)); *KF 103-CV, LLC v. Am. Family Mut. Ins. Co.*, 630 F. App'x 826, 830 (10th Cir. 2015) (unpublished) (declining to consider state court rulings in related litigation because they fell outside of the two likely exceptions to Colorado's complaint rule and there was no indication the Colorado Supreme Court would allow an exception for the state court rulings).

*B. The Allegations Relating to the Cabin Reflect Abuse*

The district court also correctly determined that coverage for the allegations relating to the cabin was defeated by the exclusion for molestation, misconduct, or abuse. The *Warfel* complaint alleged Hecht falsely imprisoned Warfel at an isolated cabin, where he lost his temper and threatened to kill her mother, cut off her finger, and knock her teeth out. When Hecht's threats turned to violence, he demanded to know how many sexual partners she had, asking "at least fourteen times in the span of a few minutes, while choking [her] and preventing her from getting clothes." Aplt. App., Vol. 1 at 118. She alleged "[t]hese questions were meant to harass, shame, and belittle" her. *Id.* at 120. Hecht also pushed her, causing her to fall and hit her head on the concrete floor, and then he physically stopped her from leaving. As a result, Hecht later pleaded guilty to domestic violence and admitted the factual basis for his crime. The state court judge presiding over the criminal matter even expressly said that Hecht exhibited abusive conduct. We agree.

Nevertheless, undeterred, Hecht attempts to rewrite the policies. He says the exclusion for abuse should be read to exclude not abuse in general, but sexual abuse in particular. Pointing to the other provisions of the exclusion that refer to "sexual molestation" and "sexual misconduct," Hecht argues we should similarly interpret "abuse" to mean "sex abuse," which he points out the *Warfel* complaint does not allege occurred at the cabin. *See* Aplt. Br. at 35. We reject this interpretation because it ignores the plain language of the policies, which excludes "abuse," not sex abuse. And as the district court observed, Hecht's interpretation also ignores the

12

exclusion's use of the disjunctive "or," which signals separate and distinct grounds for denying coverage.

Hecht insists our interpretation renders the policies' coverage for false imprisonment illusory, because "abuse, when the issue is an intentional restraint of another, necessarily, or at least virtually always, includes unwanted physical restraint." *Id.* at 36. We need not dwell on the possibility of a false imprisonment without abuse, however, because the *Warfel* complaint unmistakably alleges abuse. *See Cole*, 25 F. App'x at 796 ("Merely because false imprisonment could theoretically occur in the absence of the conduct forming the basis of [the exclusion] does not trump the actual facts."). Colorado law is clear: Exclusions eliminating coverage for intentional acts or criminal conduct seek "to prevent extending to the insured a license to commit harmful, wanton or malicious acts." *Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 957 (Colo. 1991). We will not adopt a strained reading of the policies or ignore the facts alleged to defeat this purpose. Hecht pleaded guilty to domestic violence as a consequence of his abuse. The exclusion plainly bars coverage for his conduct. To the extent Hecht suggests we should view his false imprisonment separate from his abuse, we agree with the district court's conclusion that the conduct was inseparably intertwined. There was no duty to defend in this case. Accordingly, the district court was correct to grant judgment in favor of Chubb on all claims.

13

III

The judgment of the district court is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge