[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff has instituted this action for a declaratory judgment to determine whether it is obligated to provide a defense or to indemnify the defendant in an action by one Raquel Martin for damages arising out of non-consensual sexual relations with defendant Plude while she was a minor. Plaintiff claims it is not required by its policy to defend or to indemnify because in having such sexual relations defendant committed an intentional act.
The policy in question provides: "We do not cover bodily injury or property damage intentionally caused by an insured person." Defendant is covered by a policy with a limit of $300,000. Defendant claims at the time he had sexual relations with the minor he did not know her age nor did he intend to injure her.
Connecticut has not yet decided what elements constitute an intentional act within the exclusionary clause mentioned. Most jurisdictions that have considered the matter of sexual relations with a minor have concluded that such acts are deemed to be intentional as a matter of law, regardless of the insured's subjective intent, as defendant claims in this case. See e.g. Altena United Fire Casualty Company, 422 N.W.2d 485, 488 (Iowa 1988); Allstate Insurance Company v. Thomas, 684 F. Sup. 1056
. To show an intentional act within the exclusion of a policy two elements are necessary: (1) the insured must have intended to commit the act and (2) to commit the injury that resulted. In the present case the intent to injure is inferred as a matter of law. SeeAllstate Insurance Company v. Foster, 693 F. Sup. 886, 888
(D.C. Nev. 1988); Roe v. State Farm Fire Casualty Company, 376. S.E.2d 876 (Ga. 1989); Public Employees Mutual InsuranceCompany v. Rash, 740 P.2d 370, 373 (Wash. Ct. of Ap. 1987).
The present case is one of statutory rape and the act of intercourse with a minor is in and of itself proof of intent and injury as a matter of law. CT Page 805
Raquel Martin, the alleged victim of defendant Plude's conduct, instituted her action against Plude and others in a civil suit dated December 7, 1990. The court judicially notices this suit. Her complaint contains seventeen counts, the first count of which in paragraph seven alleges in five subparagraphs wanton, wilful and intentional acts of defendant Plude in having sexual intercourse with her in 1990 when she was a minor child. Her parents join her in the action. In Count Three the alleged victim claims that as an adult defendant Plude owed a duty of reasonable care to the alleged victim which he failed to provide by violating that duty. She also claims defendant Plude's conduct was "reckless" in addition to being a negligent assault and battery. Some of the Counts allege "negligence" in violating sections 53a-71 and 53-21
of the General Statutes. Count Nine alleges "intentional infliction of emotional distress." Count Eleven alleges "negligent infliction of emotional distress." Her father joins her in these various allegations.
While there does not appear to be any evidence that defendant Plude intended to cause the alleged victim any injuries, the fact of the matter, as already indicated, when a person has sexual relations with a minor child an injury results as a matter of law regardless of the subjective intent of that person. The Connecticut statutes prohibiting such intercourse with minors and making it criminal conduct [establish] a mandatory policy that cannot be negated by any subjective intent of the person. Defendant Plude was convicted of three counts of sexual assault in the second degree in violation of section 53a-71(a)(1) and three counts of risk of injury to a child in violation of Section 53-21. State v.Plude, 30 Conn. App. 527.
The defendant Raquel Martin in the present action argues strenuously in her brief that this action is governed by the court's decision in St. Paul Fire Marine Insurance Company v. Shernow,222 Conn. 823 where the issue was whether professional liability (malpractice) insurance covered injuries sustained by a patient when a dentist, in the course of treatment, sexually assaulted her, having overcome her ability to resist through misuse of anesthesia. In a split decision, three to two, the court ruled that the insurance covered the injuries. The majority found that there were specific acts of professional negligence because the nitrous oxide gas injured the patient's lungs. See page 830. The majority held that when medically negligent procedure is inextricably intertwined with intentional conduct that serves as a basis CT Page 806 for the separate claim of assault, the professional liability policy must extend coverage in such instances. The two dissenting judges, citing the rule that common sense does not take flight when one enters the courtroom, cited American National FireInsurance Company v. Schuss, 221 Conn. 768, 778, and argued that it defies common sense on the facts in Shernow that he was "providing . . . professional services." They pointed to the jury findings that there was unconsented sexual contact and that Shernow had intentionally assaulted and battered the patient, resulting in a verdict of $100,000 in punitive damages plus an award of $300,000 compensatory damages. This established there were no "professional" services.
The rule in Schuss applied where the issue was, did the plaintiff insurance company produce sufficient evidence for a jury to find that Schuss acted negligently, rather than intentionally, when he set fire to a synagogue. The court found there was no evidence from which a jury could reasonably conclude that Schuss acted negligently, rather than intentionally and therefore the verdict of $167,877.07 for the plaintiff could not stand. See page 775. There is a real difference in meaning between an intentional act and a negligent one. Oliver Wendell Holmes is quoted as saying: "even a dog knows the difference between being tripped over and being kicked." The court's discussion about the difference between negligent conduct and intentional conduct on pages 776-777 covers the subject very well. It seems to the two dissenting justices that the majority in Shernow had a steep hill to climb and did not quite reach the top.
The court must next consider the only evidence produced in the present case. A deposition of Raquel Martin dated July 14, 1994, taken by plaintiff discloses that she was a minor when she came to know the defendant Plude who was a teacher at Central High. She was introduced to him by one of her friends. She called Plude and arranged to meet him at school, and they met. After that she called him again, met him at school again, and then went to his house on Lincoln Avenue in January 1990. He drove her there in his car and later took her home. It was about 2:30 in the afternoon. She had sexual relations at Plude's home in January, February and March of 1990, in his bedroom. Their relationship ended in the summer of 1990. In addition to sexual intercourse they engaged in oral sex.
There was a time when she couldn't see Plude because her parents didn't allow her out of the house. In addition to having sex at CT Page 807 Plude's house, they also had sexual relations at Seaside Park and also at Raquel Martin's home on Hanson Avenue.
Raquel Martin's answer in the present action, dated July 6, 1994, admits a few paragraphs of plaintiff's complaint but either denies or leaves to plaintiff's proof all the remaining allegations. In her own civil action against Plude and others she combines allegations of an intentional assault and battery with allegations of a negligent assault and battery, a reckless assault and battery, negligence, an "intentional infliction of emotional distress," and a negligent infliction of emotional distress. Obviously, however these allegations seek to express her claim with considerable redundancy of language. They endeavor to describe the acts of sexual and oral intercourse between defendant Plude and Raquel Martin as both intentional and negligent. The court must therefore determine in this action by plaintiff Allstate whether these acts can properly be described as both intentional and negligent. If they are correctly described as intentional, then the exclusion of such acts provided in plaintiff's policy would apply and the plaintiff need not defend defendant Plude. On the other hand if they are properly described as negligent acts, then plaintiff is obligated to defend Plude.
The only evidence presented in this case is found in the deposition of Raquel Martin and summarized above. There is no dispute that the sexual acts occurred over a period of approximately six months on quite a few occasions in several different places at a time when Raquel Martin was a minor child.
Raquel Martin's counsel places great faith in the Shernow
decision but this court finds it difficult to accept that case as controlling on the question of what is intentional and what is negligent. In fact, Shernow may well be described as sui generis. The issue in that case was whether the dentist Shernow's professional liability (malpractice) policy applied. It described as "negligent" the manner in which Shernow administered nitrous oxide to keep the patient he was sexually assaulting helpless while he completed his assault. He turned up the gas twice during the assault. A vital factor in reaching this conclusion was the physical injury that resulted to the patient, leaving her with a permanent asthma condition and a permanent loss of thirty-five to forty percent of her lung capacity. Shernow, pages 829-830. The court found that the administration of the gas for twice the customary length of time, the failure to check the accuracy of the mechanism metering the gas, and the failure to ask the patient about medications CT Page 808 she might be using before administering the gas, all of these facts constituted negligent malpractice covered by the professional liability policy, and this medically negligent procedure was "inextricably intertwined and inseparable from (Shernow's) intentional conduct which served as a basis for the separate claim of a sexual assault. . ." The two dissenting justices strongly disagreed with this analysis of the case, stating at page 833, that the only reason Shernow used the gas was to satisfy his sexual desires, and there was nothing in the facts of the case indicating any dental treatment was performed. Thus there was nothing to justify the majority's statement that there was a medically negligent procedure inextricably intertwined and inseparable from the intentional conduct. There was only intentional misconduct involved.
The court in the present case is of the opinion that the Schuss
decision provides a more accurate interpretation of the facts and the law here involved than does Shernow. As Schuss sets forth "it is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree. . . . are separate and mutually exclusive." See page 775 of Schuss. Quoting from Prosser and Keeton, Torts (5th Ed. 1984, pages 169-70), ". . . As the probability of injury to another, apparent from the facts within the acting party's knowledge, becomes greater, (defendant's) conduct takes on more of the attributes of intent, until it approaches and finally becomes indistinguishable from that substantial certainty of harm that underlies intent." It is undoubtedly for this reason that cases involving sexual offenses with minors frequently find the harm that occurs as a matter of law notwithstanding any attempt by the culprit to disavow an intent to injure. What Plude did in this case was not inadvertent nor was it negligent. It was deliberate and intentional.
For this reason the plaintiff's policy does not provide protection for the defendant because of the language of its coverage exempting bodily injury intentionally caused. Common sense requires the court to find that the plaintiff is not legally or contractually obliged to indemnify or defend Plude in the civil action instituted by Raquel Martin and her parents dated December 7, 1990 in the Superior Court.