IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 77836-6-I |
| | ) | |
| SARAH MARIE VANDERLINDEN, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| NICOLAS GONZALEZ VANDERLINDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | FILED: July 22, 2019 |

HAZELRIGG-HERNANDEZ, J. — Sarah VanDerlinden seeks reversal of a final parenting plan, arguing that the trial court abused its discretion in imposing de facto RCW 26.09.191 restrictions without a finding that limitations were warranted under that statute. Because the trial court explicitly declined to find any circumstances justifying RCW 26.09.191 restrictions and acted well within its broad discretion under RCW 26.09.187, we affirm.

## FACTS

Nicolas VanDerlinden and Sarah VanDerlinden[1] married in 2014 and had one child, B.C.G.V. For the early part of his life, Sarah was B.C.G.V.'s primary caregiver. However, Sarah became ill around May 2016 and was no longer able to care for B.C.G.V. unaided. The parties' relationship deteriorated and Nicolas

---

[1] For clarity, the parties will be referred to by their first names. We intend no disrespect.

filed a petition for dissolution of marriage in July 2016. The court entered temporary orders placing B.C.G.V. with Nicolas and allowing Sarah supervised visits. The guardian ad litem (GAL) recommended that B.C.G.V. reside with Nicolas except for two overnights during the week and one overnight every other weekend. Although she found that both parents had good relationships with B.C.G.V., the GAL concluded that "[t]he current level of conflict, differences in parenting styles and beliefs, and logistical considerations do not support a shared residential schedule for a permanent parenting plan." The GAL's report included the results of Sarah's psychological evaluation, which concluded that there was no basis for limitations based on Sarah's mental health.

Nicolas testified at trial that he did not believe that he and Sarah could successfully make medical decisions for B.C.G.V. jointly. The parties sought allergy testing for B.C.G.V. in response to recurring gastrointestinal and skin symptoms, but the record does not contain a definitive diagnosis of any food allergies. Sarah and Nicolas disagree regarding the nature and severity of B.C.G.V.'s sensitivities to certain foods. Nicolas testified that Sarah consistently sends him text messages after picking up B.C.G.V. claiming that he is sick and that Nicolas is "poisoning" him. She accuses Nicolas of "ruin[ing] [B.C.G.V.'s] gut for good" and "caus[ing] permanent damage to [B.C.G.V.'s] stomach all to help [Nicolas'] court case." Nicolas requested sole decision-making authority over B.C.G.V.'s education and health care because of their strained relationship and conflicting opinions on B.C.G.V.'s health. He expressed concern about the kind of medical treatment that B.C.G.V. might receive under Sarah's care.

Sarah testified that Nicolas had never questioned B.C.G.V.'s alleged food sensitivities until the divorce proceedings began. She felt that Nicolas was "neglecting [B.C.G.V.'s] medical care and actually causing him to be sick." When asked on cross-examination whether she thought she and Nicolas would be able to make joint decisions regarding B.C.G.V.'s medical care, she responded, "[w]hen I know he's causing him to be sick, no, it's going to be really difficult."

After a trial, the court ordered that B.C.G.V. would reside primarily with Nicolas and would have two to three overnights with Sarah per week. Sarah would pick up B.C.G.V. from daycare at 3:00 p.m. every Tuesday and Thursday and drop him off at daycare at 9:00 a.m. the following morning. She would also have B.C.G.V. every other weekend from Saturday at noon to Sunday at 7:00 p.m. and for six hours during Nicolas' Sunday soccer games. Nicolas was given sole medical decision-making authority because of "toxic communication between parents," but must inform Sarah of any medical decisions made. Although Nicolas proposed a finding on Sarah's abusive use of conflict, the trial court crossed out this provision of the proposed order and stated that it would not enter RCW 26.09.191 restrictions. The parenting plan included a written finding that Sarah "does not suffer from any mental disability" but should continue to engage in weekly therapy to address all issues raised by the psychological experts. The court found that neither parent was mentally ill "[b]ut the fact that these charges [were] leveled against each other[] shows the [level] of discord between the parties." Sarah timely appealed.

DISCUSSION

I.  Waiver

In her opening brief, Sarah argues that "[t]he trial court erred in imposing parenting restrictions under RCW 26.09.191" and goes on to specify four restrictions that she believes were not warranted by the evidence. In his response, Nicolas correctly points out that the trial court did not impose restrictions under RCW 26.09.191 in this case. He argues that we should decline to review the alleged error because the issues on appeal are "all premised on the incorrect assertion that the trial court imposed [RCW 26.09.191] restrictions" and Sarah has therefore waived review of the trial court's ruling under RCW 26.09.187. Sarah replies that, although the court did not impose restrictions under RCW 26.09.191, the provisions of the parenting plan included the type of restrictions that would require evidentiary findings under RCW 26.09.191, and the trial court erred in imposing those restrictions in the absence of those findings.

The Rules of Appellate Procedure (RAP) require that an appellant identify each alleged error made by the trial court. RAP 10.3(a)(4). "It is well settled that a party's failure to assign error to or provide argument and citation to authority in support of an assignment of error, as required under RAP 10.3, precludes appellate consideration of an alleged error." Escude ex rel. Escude v. King County Pub. Hosp. Dist. No. 2, 117 Wn. App. 183, 190, 69 P.3d 895 (2003) (citing Hollis v. Garwall, Inc., 137 Wn.2d 683, 689 n.4, 974 P.2d 836 (1999); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992)). However, courts are directed to construe the rules liberally to "facilitate the decision of cases

4

on the merits," except where justice demands otherwise. RAP 1.2(a). Even when an appellant has not technically complied with the rules, the court should exercise its discretion to consider a case on the merits when "the nature of the appeal is clear and the relevant issues are argued in the body of the brief and citations are supplied so that the court is not greatly inconvenienced and the respondent is not prejudiced." State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

Here, although Sarah explicitly tied her assignment of error to the incorrect assertion that the trial court had imposed restrictions under RCW 26.09.191, it was sufficiently clear which portions of the parenting plan she was challenging. The briefing was adequate to allow Nicolas to respond in defense of the provisions. He was not prejudiced and the court was not greatly inconvenienced by the error. We will review the merits of the appeal.

II.    Judicial Estoppel

In her reply brief, Sarah argues that Nicolas should be judicially estopped from arguing that the trial court was permitted to enter the challenged conditions of the parenting plan without making evidentiary findings under RCW 26.09.191. She contends that Nicolas argued below that the trial court could only grant his request for sole decision-making authority if it found an evidentiary basis for RCW 26.09.191 restrictions.

Judicial estoppel prevents a party from "'asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)).

The purpose of the doctrine is to preserve respect for the courts and avoid inconsistency, duplicity, and waste of time. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 861, 281 P.3d 289 (2012). Judicial estoppel exists to protect the integrity of the judicial process, rather than the litigants. Arp v. Riley, 192 Wn. App. 85, 91, 366 P.3d 946 (2015). The doctorine only applies when "a litigant's prior inconsistent position benefited the litigant or was accepted by the court." Johnson v. Si-Cor. Inc., 107 Wn. App. 902, 909, 28 P.3d 832 (2001) (citing Witzel v. Tena, 48 Wn.2d 628, 633, 295 P.2d 1115 (1956)).

When discussing the proposed parenting plans at a post-trial hearing, Sarah objected to the following proposed section:

> 3. Reasons for putting limitations on a parent (under RCW 26.09.191)
>
> . . .
>     b. Other problems that may harm the child's best interests:
>
> A parent has one or more of these problems as follows:
>
> > Abusive use of conflict – Sarah VanDerlinden uses conflict in a way that endangers or damages the psychological development of [B.C.G.V.].

(emphasis removed). Nicolas responded that the court had to "find some reason . . . under that section" to give him sole decision-making authority. The court responded that it was not going to adopt the proposed finding, saying that one of the reasons it was imposing sole decision-making authority was "to keep the parties from going at each other." Nicolas asked if the court was going to make any finding regarding why it was ordering sole decision-making and the court indicated it was "because of parties' difficulty in communication and the fact that the father is the sole custodian—is the primary custodian."

Sarah contends that Nicolas should be estopped from asserting, as he does in his responsive brief, the "clearly inconsistent position" that the provisions of the final parenting plan were within the court's broad discretion even without evidentiary findings under RCW 26.09.191. However, the court did not accept Nicolas' premise at trial that it needed to make evidentiary findings under RCW 26.09.191 to justify giving Nicolas sole decision-making authority. Because his position at trial was not accepted by the court, judicial estoppel does not apply.

III. Parenting Plan

Sarah contends that the trial court erred in imposing four provisions of the parenting plan: 1) giving Nicolas sole medical decision-making authority, 2) giving Nicolas sole educational decision-making authority,[2] 3) making Nicolas the primary residential parent, and 4) recommending that Sarah continue counseling.

We review decisions concerning the provisions of a parenting plan for abuse of discretion. In re Marriage of Littlefield, 133 Wn. 2d 39, 46, 940 P.2d 1362 (1997). A trial court abuses its discretion when a decision is manifestly unreasonable or based on untenable grounds. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." Littlefield, 133

---

[2] Although Sarah lists this provision when discussing the court's alleged errors, she does not argue against it separately from the issue of medical decision-making authority. Accordingly, we will address the two provisions together.

Wn.2d at 47. We will uphold a trial court's findings of fact if they are supported by substantial evidence. Katare v. Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). "Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the matter asserted." Id.

A court's discretion in fashioning a parenting plan is guided by statute. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). We review the meaning of a statute de novo. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When interpreting the provisions of a statute, "[t]he court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Id. at 9—10. We construe an act as a whole and interpret related statutory provisions in relation to each other, harmonizing all provisions. C.J.C. v. Corp. of Catholic Bishop of Yakima, 138 Wn.2d 699, 708, 985 P.2d 262 (1999).

A permanent parenting plan must contain residential provisions for the child and assign decision-making authority regarding the child's education, healthcare, and religious upbringing to one or both parents. RCW 26.09.184(2), (5). The court shall protect the best interests of the child when imposing a parenting plan. RCW 26.09.002; RCW 26.09.184(1)(g). The court is required to limit residential time and decision-making authority if it finds that a parent has engaged in willful abandonment, abuse of a child, or domestic violence. RCW 26.09.191(1), (2)(a). The court is permitted, but not required, to limit provisions of the parenting plan if it finds that certain other circumstances exist, including a parent's neglect, long-

8

term impairment from substance abuse, or abusive use of conflict. RCW 26.09.191(3).

A. Decision-Making Authority

Sarah contends that the trial court erred in granting Nicolas sole decision-making authority over B.C.G.V.'s heath care and education. In the absence of an agreement between the parties, RCW 26.09.187(5) allows the court to allocate mutual decision-making authority to both parents or sole decision-making authority to one parent, even without findings justifying limitations under RCW 26.09.187(2)(b), (c):

> (b) SOLE DECISION-MAKING AUTHORITY. The court shall order sole decision-making to one parent when it finds that:
> (i) A limitation on the other parent's decision-making authority is mandated by RCW 26.09.191;
> (ii) Both parents are opposed to mutual decision making;
> (iii) One parent is opposed to mutual decision making, and such opposition is reasonable based on the criteria in (c) of this subsection.
> (c) MUTUAL DECISION-MAKING AUTHORITY. Except as provided in (a) and (b) of this subsection, the court shall consider the following criteria in allocating decision-making authority:
> (i) The existence of a limitation under RCW 26.09.191;
> (ii) The history of participation of each parent in decision making in each of the areas in RCW 26.09.184(5)(a);
> (iii) Whether the parents have a demonstrated ability and desire to cooperate with one another in decision making in each of the areas in RCW 26.09.184(5)(a); and
> (iv) The parents' geographic proximity to one another, to the extent that it affects their ability to make timely mutual decisions.

Sarah accuses Nicolas of misstating the law and misleading this court by reading RCW 26.09.187(2)(b) and (c) together because "[t]he two cannot just be lumped together as one since (b) concerns sole decision-making authority, and (c) concerns mutual decision-making authority[.]" But RCW 26.09.187(2)(b) explicitly

references the criteria in section (c) as factors for the court to consider when deciding whether sole decision-making authority is appropriate. This accusation has no merit.

Indeed, Sarah herself misstates the law by arguing repeatedly that the trial court may not give one parent sole decision-making authority in the absence of evidentiary findings under RCW 26.09.191. The plain language of RCW 26.09.187(2) gives the court discretion to impose sole decision-making authority in certain circumstances. Although RCW 26.09.187(2)(b) includes neither a disjunctive nor coordinating conjunction between its subsections, the only logical reading of this statute is that each of the subsections can independently support sole decision-making authority. The court cannot impose mutual decision-making authority if a parent engages in conduct mandating limitations under RCW 26.09.191(1), regardless of parental opposition. Reading RCW 26.09.187(2)(b) to impose additional requirements would create an impermissible inconsistency in the statutory scheme.

In this case, the parenting plan gives decision-making authority for educational and non-emergency health care decisions to Nicolas, with the condition that he cooperate with and adhere to B.C.G.V.'s pediatrician's recommendations and keep Sarah apprised on at least a monthly basis. The parenting plan specifies that the reason for the limitation is that "[o]ne of the parents does not want to share decisions-making [sic] and this is reasonable because of the parents' inability to cooperate with each other in decision-making." There is substantial evidence in the record that the parties had very different opinions about

what constituted appropriate medical care for B.C.G.V. Because the trial court made appropriate findings under RCW 26.09.187(b) which were supported by substantial evidence, it did not abuse its discretion in ordering sole decision-making authority.

B. Residential Time

Sarah also contends that the court erred in appointing Nicolas as the primary residential parent. The residential provisions in the parenting plan must "encourage each parent to maintain a loving, stable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances." RCW 26.09.187(3). When limitations under RCW 26.09.191 are not warranted, the court must consider the following factors to determine the child's residential schedule:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
> (iii) Each parent's past and potential for future performance of parenting functions as defined in *RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
> (iv) The emotional needs and developmental level of the child;
> (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
> (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
> (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

RCW 26.09.187(3)(a). The first factor is the most important. Id. The court may order that the child alternate his residence between the parents "for brief and

substantially equal intervals of time" if this is in the best interests of the child. RCW 26.09.187(3)(b).

In its oral ruling on the parenting plan, the court stated that it did not believe that restrictions under RCW 26.09.191 were appropriate and stated, "[i]n the absence of those, then we go to the regular criteria under [RCW] 26.09.187." The court then analyzed each of the factors enumerated in RCW 26.09.187(3)(a) on the record and concluded that the criteria weighed in favor of Nicolas as the primary residential parent. The court felt that a "50/50" residential schedule was not appropriate because Sarah seemed to be "in transition right now, mentally, physically, emotionally, and as it relates to her fiscal situation," while Nicolas had more stability in those areas. Accordingly, the court imposed a residential schedule nearly identical to the one recommended by the GAL, noting that this schedule would "maintain[] the connection that the mom has with the child."

The trial court did not abuse its discretion in imposing the residential provisions of the parenting plan. After finding no basis for limitations under RCW 26.09.191, the court properly considered the factors in RCW 26.09.187(3)(a) on the record and determined that the GAL's recommended residential schedule was appropriate. The court also addressed the reasons that equal parenting time was not in the best interests of the child.

Sarah argues that these "harsh restrictions" on her parenting time could not properly be imposed without RCW 26.09.191 findings. This argument is unfounded. Simply put, there are no harsh restrictions on her parenting time. The court has considerable discretion in fashioning a parenting plan and is not required

12

to order precisely equal parenting time when there is no basis for RCW 26.09.191 restrictions. Under the parenting plan, she has unsupervised parenting time with B.C.G.V. on four to six days of every week and an equal share of holiday time. This schedule is well within the trial court's broad discretion under RCW 26.09.187.

C. Counseling Provision

Finally, Sarah contends that the trial court erred in imposing the provision that she "should continue to engage in weekly therapy . . . until treatment goals are met." She argues that this provision "condition[s] her parental rights on continuing to see a therapist based on factors outside of her decision-making authority." However, when she challenged this proposed provision at a post-trial hearing, the court struck the only language in the proposed parenting plan that expressly conditioned any of her parenting time on compliance with this provision. The court also reiterated that it wanted Sarah to continue to engage in counseling as directed until treatment goals were met. In its partial oral ruling, the court made clear that it was not going to grant Sarah additional residential time because "there needs to be some intervention, some counseling, and some stability. And people need to take care of themselves, really, before they spend too much time taking care of others." The counseling provision was related to the court's assessment that Sarah was "in transition" at the time, and her progress toward the experts' treatment goals would be in B.C.G.V.'s best interests. The court did not abuse its considerable discretion in imposing this provision.

IV.   Attorney's Fees

In response to Sarah's argument, Nicolas contends this appeal is frivolous and he should be awarded attorney's fees.   Under RAP 18.9(a), we may award attorney's fees incurred by a prevailing party in responding to a frivolous appeal. Stiles v. Kearney, 168 Wn. App. 250, 267–68, 277 P.3d 9 (2012) (awarding fees where the arguments "fail because they either lack merit, rely on a misunderstanding of the record, require a consideration of evidence outside the record, or are not adequately briefed.").   An appeal is frivolous if it presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no reasonable possibility of reversal.   In re Marriage of Foley, 84 Wn. App. 839, 847, 930 P.2d 929 (1997).   Any doubts as to whether the appeal is frivolous should be resolved in favor of the appellant.   Public Emps. Mut. Ins. Co. v. Rash, 48 Wn. App. 701, 706, 740 P.2d 370 (1987).

The issue that Sarah presented for appeal was whether the trial court erred in imposing restrictions under RCW 26.09.191.   There was no reasonable possibility of reversal on this issue because the court did not impose restrictions under that statute.   When Nicolas pointed this out in his response, Sarah argued in reply that the trial court erred because the provisions of the parenting plan could not properly be imposed without evidentiary findings under RCW 26.09.191.   As discussed above, the trial court has broad discretion under the plain language of RCW 26.09.187 to order sole decision-making authority, unequal residential time, and other provisions in the best interests of the child.   Even viewing this appeal in

14

the light most favorable to the appellant, there was no reasonable possibility of reversal. The appeal was frivolous and Nicolas should be awarded attorney's fees.

Affirmed.

WE CONCUR:

Chun, J.

Andrus, J.